ORIGINAL

DAVID J. GIERLACH 5041
500 Ala Moana Boulevard
Suite 330, 5 Waterfront Plaza
Honolulu Hawaii 96813
Telephone: (808) 523-1332
Facsimile: (808) 526-2275
Email: gierlach@verizon.net

BRIAN A. DUUS 8196
500 Ala Moana Boulevard
Suite 330, 5 Waterfront Plaza
Honolulu Hawaii 96813
Telephone: (808) 523-1332
Facsimile: (808) 526-2275
Email: gierlach@verizon.net

Attorney for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 05 2006

at 10 o'clock and 55 min. a M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MEGAN KAINA, KAMAILE KAINA, KAWIKA KAINA through their Next Friend, MALIA KAINA; ISAAC KAINA; AVON KEALOHA; MITSUO TOMITA; ANDY TOMITA; JESSE TOMITA; AMOS TOMITA AND AVON KEALOHA AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LISA TOMITA KAINA, | CIVIL NO. CV 04 00608 DAE [Non-Motor Vehicle Tort] |
| Plaintiffs, | PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, FILED |
| vs. | CERTIFICATE OF SERVICE |
| | TRIAL: MARCH 21, 2006 |

[CAPTION CONTINUED]

| | | | |
|---|---|---|---|
| COUNTY OF MAUI; COUNTY OF MAUI POLICE DEPARTMENT; ; NELSON JOHNSON; ALLEN DE LARA; AND DOE DEFENDANTS 3-100 DEFENDANTS, | ) | HEARING: | |
| | ) | DATE: | JANUARY 23, 2006 |
| | ) | TIME: | |
| | ) | JUDGE: | DAVID A. EZRA |
| Defendants. | ) | | |
| | ) | TRIAL: | MARCH 21, 2006 |

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . 1

II. BACKGROUND . . . . . . . . . . 2

A. Nelson Johnson/Disciplinary History . . . . . . . . . . 2
B. Nelson Johnson's Inadequate Training . . . . . . . . . . 8
C. DeLara's Inadequate Training . . . . . . . . . . 8
D. The Incident Of January 23, 2004 . . . . . . . . . . 9
E. Objective Evidence/Eyewitness Testimony . . . . . . . . . . 10
F. Expert Testimony . . . . . . . . . . 12
1. D.P. Van Blaricom . . . . . . . . . . 12
2. David Yoshida . . . . . . . . . . 13
3. Robert Fonzi . . . . . . . . . . 13
G. DeLara Testimony Regarding Incident . . . . . . . . . . 14
H. Johnson Testimony Regarding Incident . . . . . . . . . . 15
I. County Admissions . . . . . . . . . . 15

III. ARGUMENT . . . . . . . . . . 16

A. Plaintiffs' Claims under 42 U.S.C. § 1983 . . . . . . . . . . 16
1. Johnson And DeLara Are Individually Liable . . . . . . . . . . 17
2. County Of Maui Is Liable For Failure To Train Their Police . . . . . . . . . . 26
3. County Of Maui Is Liable By Ratification Of Officers' Conduct . . . . . . . . . . 32
B. Plaintiffs' Remaining Tort Claims Are Valid . . . . . . . . . . 33
1. Assault And Battery . . . . . . . . . . 33
2. Intentional And Negligent Infliction Of Emotional Distress . . . . . . . . . . 33
3. Plaintiffs Have Valid Tort Claims For Negligent Supervision . . . . . . . . . . 34

4. Plaintiffs' Wrongful Death Claim Is Valid ..... 35

5. Plaintiffs On Punitive Damages ..... 35

# TABLE OF AUTHORITIES

*Abraham v. Raso*,
183 F.3d 279 (3rd Cir. 1999) . . . . . . . . . . 22

*Allen v. Muskogee*,
119 F.3d 837 (10th Cir. 1997), *cert. denied*, *City of Muskogee v. Allen*,
522 U.S. 1148, 118 S. Ct. 1165 (1998) . . . . . . . . . . 28

*Beck v. City of Pittsburgh*,
89 F.3d 966 (3rd Cir. 1996), *cert. denied*, *City of Pittsburgh v. Beck*,
519 U.S. 1151, 117 S. Ct. 1086 (1997) . . . . . . . . . . 30
. . . . . . . . . . 31

*Board of County Comm'rs v. Brown*,
137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997) . . . . . . . . . . 27

*Brosseau v. Hogan*,
543 U.S. 194, 125 S. Ct. 596 (2004) . . . . . . . . . . 20
. . . . . . . . . . 21

*Brown v. Bryan County*,
219 F.3d 450 (5th Cir. 2000), *cert. denied*,
*Bd. of County Comm'rs v. Brown*,
532 U.S. 1007, 121 S. Ct. 1734 (2001) . . . . . . . . . . 32

*Brown v. Gray*,
227 F.3d 1278 (10th Cir. 2000) . . . . . . . . . . 30

*Christie v. Iopa*,
176 F.3d 1231, 1238-39 (9th Cir. 1999), *cert. denied*,
*County of Hawaii v. Anderson*,
528 U.S. 928, 120 S. Ct. 324 (1999) . . . . . . . . . . 33

*City of Canton v. Harris*,
489 U.S. 378, 109 S. Ct. 1197 (1989) ............ 26
............ 27
............ 28
............ 29
............ 34

*Cowan v. Breen*,
352 F.3d 756 (2nd Cir. 2003) ............ 21

*Davis v. Mason County*,
927 F.2d 1473 (9th Cir. 1991), *cert. denied*,
*Mason County v. Davis*,
502 U.S. 899, 112 S. Ct. 275 (1991) ............ *29*

*Deorle v. Rutherford*,
272 F.3d 1272 (9th Cir. 2001) ............ 25

*Dudly v. Eden*,
260 F.3d 722 (6th Cir. 2001) ............ 21

*Estate of Starks v. Enyart*,
5 F.3d 230 (7th Cir. 1994) ............ 19

*Fraser v. County of Maui*,
855 F. Supp. 1167 (D. of Hawaii 1994) ............ 34

*Gibson v. County of Washoe*,
290 F.ed 1175 (2002), *cert. denied*,
*Hopkins v. Andaya*,
958 F.2d 881 (9th Cir. 1992) ............ 26

*Johnson v. Glick*,
481 F.2d 1028 (2nd Cir. 1973) ............ 25

*Larez v. Los Angeles*,
946 F.2d 630 (9th Cir. Cal. 1991) ............ 35

*McCaslin v. Wilkins*,
183 F.3d 775 (8th Cir. 1999) .......................................... 24

*Nauman v. Bugado*,
374 F. Supp. 2d 893 (D. Haw. 2005) .................................... 27

*Ozaki v. Association of Apartment Owners*,
87 Hawai'i 273, 954 P.2d 652 (App. 1998) ............................. 33

*P.B. v. Koch*,
96 F.3d 1298 (9th Cir. 1996) .......................................... 25

*Pace v. Capobianco*,
283 F.3d 722 (11th Cir. 2002) ......................................... 21

*Pourny v. Maui Police Dep't*,
127 F. Supp. 2d 1129 (2000) ........................................... 33

*Robinson v. Solano County*,
278 F.3d 1007 (9th Cir. 2002) ......................................... 24

*Santos v. Gates*,
287 F.3d 846 (9th Cir. 2002) .......................................... 25

*Scott v. Clay County, Tennessee*,
205 F.3d 867 (6th Cir. 2000) .......................................... 20

*Scott v. Henrich*,
39 F.3d 912 (9th Cir. 1994) ........................................... 23

*Smith v. Wade*,
461 U.S. 30, 103 S. Ct. 1625 (1983) ................................... 35

Tennessee v. Garner,
471 U.S. 1, 105 S.Ct. 1964 (1985) ..................................... 17
.......................................................................... 18

*Washoe County of Gibson*,
2003 U.S. LEXIS 609 (U.S. January 13, 2003) . . . . . . . . . . . . . . . . . . . . . . . 26

*Young v. City of Providence*,
404 F.3d 4 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Zuchel v. City and County of Denver*,
997 F.2d 730 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

H.R.S. § 663-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

DAVID J. GIERLACH 5041
500 Ala Moana Boulevard
Suite 330, 5 Waterfront Plaza
Honolulu Hawaii 96813
Telephone: (808) 523-1332
Facsimile: (808) 526-2275
Email: gierlach@verizon.net

BRIAN A. DUUS 8196
500 Ala Moana Boulevard
Suite 330, 5 Waterfront Plaza
Honolulu Hawaii 96813
Telephone: (808) 523-1332
Facsimile: (808) 526-2275
Email: gierlach@verizon.net

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MEGAN KAINA, KAMAILE KAINA, KAWIKA KAINA through their Next Friend, MALIA KAINA; ISAAC KAINA; AVON KEALOHA; MITSUO TOMITA; ANDY TOMITA; JESSE TOMITA; AMOS TOMITA AND AVON KEALOHA AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LISA TOMITA KAINA, | CIVIL NO. CV 04 00608 DAE [Non-Motor Vehicle Tort] |
| Plaintiffs, | PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, FILED |
| vs. | CERTIFICATE OF SERVICE |
| | TRIAL: MARCH 21, 2006 |

[CAPTION CONTINUED]

| | | |
|---|---|---|
| COUNTY OF MAUI; COUNTY OF MAUI POLICE DEPARTMENT; ; NELSON JOHNSON; ALLEN DE LARA; AND DOE DEFENDANTS 3-100 DEFENDANTS, | ) HEARING: | |
| | ) DATE: | JANUARY 23, 2006 |
| | ) TIME: | |
| | ) JUDGE: | DAVID A. EZRA |
| Defendants. | ) | |
| | ) TRIAL: | MARCH 21, 2006 |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiffs respectfully oppose Defendants' Motion for Summary Judgment. Disputed issues of material fact preclude a grant of qualified immunity. Lisa Kaina's car was stopped, pinned in by police cars and other obstructions and posed no immediate threat to anyone at the time that police shot and killed her. The County is liable for its deliberately indifferent failure to train the officers involved. Such deliberate indifference was a substantial factor in causing the death of Ms. Kaina. Disputed issues of material fact also preclude summary adjudication of Plaintiffs' remaining claims of assault and battery, intentional and negligent infliction of emotional distress, negligent supervision, wrongful death and punitive damages. For the reasons set forth below, Plaintiffs respectfully request this Court to deny the pending motion.

## II. BACKGROUND

### A. Nelson Johnson/Disciplinary History[1]

Defendant Nelson Johnson has a long history of disciplinary problems with the Maui Police Department ("MPD"), including threats of violence and actual violence both on and off duty. However, MPD took no steps to further train Johnson, to insure that he attended appropriate anger management courses, or to insure that he was otherwise suitable to serve as a police officer.

On March 16, 2000, as a School Resource Officer at Maui High School, Johnson removed his police gun belt, unzipped his police uniform shirt, and challenged a high school student to a fight, violating six subsections of MPD's General Order 103.1. *See* Exhibit 1 at 1623-1626. The penalty: Johnson was taken out of the school and put back on armed patrol. *Id.*; Exhibit 3,168-170.

---

[1]All of the Internal Affairs records, Exhibits 1, 2, 5-8, 13-14, were authenticated by Wayne Thomas Ribao, *see* Exhibit 29. The statements made in the exhibits are offered as notice to Maui Police Department. *See United States v. Rogers,*, 321 F.3d 1226, 1229 (9th Cir. 2003) (acknowledging that document entered for the purpose of showing notice to a party is not hearsay); *United States v. Rogers*, 321 F.3d 1226, 1229-30 (9th Cir. 2003) (holding that a criminal complaint filed against the organizer of IFR was admitted for the non-hearsay purpose of showing that the defendant had notice that IFR was fraudulent). *See Grego v. Mejer, Inc.*, 239 F. Supp. 2d 676, 682 (W.D. Ky. 2002) (in negligent supervision case, court held that reports of harassment to employer are not inadmissible hearsay rather "the written report appears to be admissible under the business records exception, and . . . the verbal reports of harassment are not technically hearsay because they are not being used to assert the truth of the matter asserted, but rather to show that defendant was on notice of a fact").

On October 17, 2003, **only three months before the shooting death of Lisa Kaina**, it was determined that Johnson verbally and physically assaulted another officer on November 26, 2002 at a community basketball game. *See* Exhibit 2 at 2279. Johnson said and did this to a fellow officer:

> "Ramos wait 'till after the game. I goin' broke your fucking ass! You wait you fucking prick!"
>
> * * *
>
> Johnson immediately erupted, yelling out loud, "fuck these refs, they full of shit, this fucking game is fucking juice!"
>
> As Johnson walked away, he said that "wait, 'till the end of the game you fucka and see what happens!"
>
> * * *
>
> With minutes remaining in the game, while Johnson was sitting on the bench, * * * Johnson says twice "you wait Darrell, I goin' kick your fucking ass!"
>
> * * *
>
> As he [the referee officer] attempted to walk to the scorers table to attempt to report the violation, Johnson approached him from the front and bumped into him with his stomach. Johnson looked at him and said, "come on Darrell! Let's go outside right now! Fuck, let's just beef!" He attempted to walk pass [sic] Johnson and ignore him, however out of his right eye he saw that Johnson had taken an aggressive stance and was clenching his fist. As he turned to Johnson to ascertain his movements, Johnson swung at him with a punch.

Exhibit 2 at 2285-2287.

The penalty: Johnson was suspended for one day. But, his discipline could be reduced to a written reprimand if he completed an approved anger management course. Exhibit 2 at 2279. Johnson **did not** attend an approved anger management course. Exhibit 3 at 165.

In June 2002, nineteen months before Ms. Kaina was shot, U.H. student Christopher Chang was involved in an automobile accident with Johnson. *See* Exhibit 7 at 1864. The crash was caused by a third person and not by Johnson or Chang. However, Johnson's behavior was so bizarre that Chang filed a complaint with the Maui Police Commission. *Id.* Immediately after the accident, Johnson cursed and swore: "Look at my fucking truck. I just got it and look at this shit. What the fuck were you doing?" *Id.* Later, Johnson telephoned Chang and attempted to extort Chang to get Johnson's truck repaired, saying "if we don't deal with this, I can make it worse for everybody and claim I was injured." Exhibit 7 at 1864.[2]

The Maui Police Commission declined to investigate this matter and referred it to MPD Internal Affairs. The case was not pursued by I.A. purportedly because Mr. Chang decided not to pursue it. Exhibit 7 at 1860. Chief Phillips'

---

[2]Remarkably, Maui Police Chief Phillips denied that Johnson's conduct sounded like extortion, and otherwise minimized its seriousness. Exhibit 4 at 108.

took no further action to determine whether or not Johnson in fact engaged in the conduct alleged. Exhibit 4 at 112-113.

On March 1, 2002, Jesse Heue was arrested by a number of officers, including Johnson. He had surrendered in a men's room after the police officers gave chase. The first officer into the bathroom kicked Heue in the head. That officer was Johnson. *See* Exhibit 8 at 2578-2579; 2623-2624. Because Heue did not contact Internal Affairs to file a complaint, the case was closed. *Id.* at 2578.

Johnson's wife reported to MPD that on June 26, 2000 at 5:30 a.m., Johnson grabbed her around the neck, choked her for 30 seconds and kicked her *See* Exhibit 6 at 2460. This incident was not pursued by MPD purportedly because Mrs. Johnson withdrew her complaint. *Id.* at 2435-36. According to Chief Phillips, a police officer convicted of domestic violence will lose his weapon and his job. Exhibit 4 at 62-63. Phillips admitted that spouses frequently withdraw domestic violence complaints even though the violence in fact occurred. *Id.*

Between March and May 1999, Johnson repeatedly violated the MPD Code of Conduct by making mocking and belittling remarks to an MPD dispatcher (who was also Johnson's former girlfriend). Exhibit 5 at 1575-1576.

Between 1999 and 2002, Johnson's annual Performance Evaluations rated him as **less than satisfactory** in Coping With Stress and Working Relationships With People. Exhibit 10 at 174, 179; Exhibit 11 at 160, 165; Exhibit 12 at 134. Whereas Johnson had previously demonstrated average or above average ratings regarding these two crucial performance criteria (*see* Exhibit 9), commencing with his August 15, 1999 evaluation, Johnson showed a marked decline. For example, "Officer Johnson gets affected by stressful situations, especially in the area of personal incidents; he sometimes allows these personal problems [sic] affect his performance. At one time, requesting to be excused from duty because of a complaint filed against himself. He needs to cope better under these situations." Exhibit 10 at 174. In the same evaluation, Johnson scored less than satisfactory in his Working Relationships With People. That evaluation indicated that Johnson had conflicts with personnel within the department and that both civilian and sworn personnel had expressed displeasure with Johnson. *Id.* at 179.

On June 30, 2000, Johnson again scored **below average** on Coping with Stress, and in his Working Relationships With People. Exhibit 11 at 160, 165.

On June 30, 2002, Johnson again scored **below average** in his Working Relationships With People. The supervisor noted "this has been one of Officer Johnson's major weaknesses. At times he may come across abrupt and has

'rubbed' people both in and out of the department the wrong way[.]" Exhibit 12 at 134.

Despite the fact that MPD has a contractual relationship with psychologist Gary Farcas, and despite the fact that officers can be sent to Dr. Farcas in the discretion of Chief Phillips, Johnson was never referred to Dr. Farcas. *See* Exhibit 4 at 57-59; 61-62; 65; 71-72; 83; 95-97.[3]

In the face of 12 sustained disciplinary actions and numerous other alleged incidents, Johnson was never sent to counseling to address and/or assess his anger issues. Exhibit 15. No effort was made by MPD to determine if he posed a danger to others. No referral was made to MPD's on-call psychologist for an evaluation. No additional training or intervention was given. Indeed, Chief Phillips refused to even acknowledge the seriousness of Johnson's misconduct thereby tacitly approving it. *See* Exhibit 4 at 98. Finally, when Johnson himself was questioned about the various incidents of violence and attempted violence against others, Johnson claimed that his wife, his fellow officer and UH student Chang **were all**

---

[3]In addition to the misconduct recited above, Johnson was involved in numerous motor vehicle accidents both on and off duty as a police officer. On August 15, 2003, he rear-ended another automobile in Kailua on Oahu which caused thousands of dollars of damage to each vehicle. Fortunately no one was injured. Exhibit 13 at 2218, 2219, 2253 and 2265. On April 22, 2001, on duty, Johnson was involved in a motor vehicle accident and was reprimanded for his failure to attend to his driving. Exhibit 14 at 2563-2564. On July 2, 1999, Johnson was again reprimanded for being involved in a motor vehicle accident while on duty. Exhibit 30 at 2517.

**liars**. *See* Exhibit 3 at 179; 219; 224; 230-31.

B. Nelson Johnson's Inadequate Training

Aside from recruit school that Johnson attended in 1995, and aside from his annual qualification with his firearms, Johnson testified that the only training he received as to the use of force was receipt of a use of force handout. He was just told to read it. Exhibit 3 at 15; 34-36. Johnson recalled no testing, either written or verbal, on the use of lethal force from the time he left recruit school in 1996 until January 2004. *Id.* at 36. Nor did Johnson recall any use of force mock exercises, directed at training officers on whether or not to use lethal force, between recruit school and January 2004. *Id.*

Strikingly, the training he did receive violates the law. Johnson was specifically trained that a **subjective** rather than **objective** standard applies to the officer's assessment in whether or not lethal force is justified. Exhibit 3 at 42:16-25; 73:8-25.

C. DeLara's Inadequate Training

Like Johnson, DeLara received use of force training in recruit school but could not recall any training on deadly force thereafter. Exhibit 16 at 29.

DeLara could recall no training from MPD on alternatives to getting a driver out of a stolen car short of shooting the driver. *Id.* at 46. DeLara could not

recall any training received in shooting at a driver of a moving vehicle. *Id.* at 55. He could recall no regularly scheduled training after recruit school regarding the use of deadly force. *Id.* DeLara was unfamiliar with the basic order that police use only force that is reasonably necessary. *Id.* at 74.

D. The Incident Of January 23, 2004

On January 23, 2004, Ms. Kaina stole a Cadillac from the Hertz Rental Car Agency. Roseanne Fernandez, an employee of Hertz, had to step away from the Cadillac as it left the rental lot.[4] MPD dispatch announced the theft and reported that the car had "hardly any gas." Exhibit 31 at 1463. DeLara heard this. Exhibit 16 at 52. Johnson was the first officer to see the Cadillac. Exhibit 27 at 892-893. It was stopped in traffic, in the correct lane of traffic and obeying all traffic laws. Exhibit 3 at 77-82.

Only when Johnson activated his police lights and siren did the Cadillac attempt to flee. *Id.* at 80. Johnson knew that the Cadillac, if it attempted to

---

[4]The County cannot use this incident to justify later shooting Kaina. Fernandez was uninjured. Exhibit 34 at 41. Fernandez testified the Cadillac drove in a straight line, and did not swerve. *Id.* at 54-55. Therefore, Fernandez may have had to step out of the way, but there is no evidence Kaina maneuvered to intentionally hit her. Defendant's expert Robert Fonzi incorrectly believed Kaina veered toward Fernandez. Exhibit 23 at 71-72. Even with that misunderstanding, however, Fonzi still testified that police would not have been justified in shooting Kaina five minutes later, because an immediate threat no longer existed. *Id.* at 68-69. Therefore, police were not justified in shooting Kaina while she was immobilized based on her possible earlier conduct.

escape, would head toward a crowded Paia Town. *Id.* at 77-78; 81. Johnson continued the chase even after he and the Cadillac entered Paia Town. *Id.* at 85-88; 92.

DeLara also responded. According to DeLara, Johnson's pursuit was inconsistent with MPD policies and procedures because if an officer knows that a high speed chase will shortly result in the cars entering a crowded area, pursuit is not warranted or permitted. Exhibit 16 at 41-42. DeLara responded and came toward the Cadillac from the opposite direction. The Cadillac made an abrupt left-hand turn onto the sidewalk fronting the Bank of Hawaii.

E. Objective Evidence/Eyewitness Testimony

Numerous eyewitnesses stated the Cadillac posed **no imminent threat of death or serious bodily injury to the officers or to others**. San Francisco psychologist Ronald DeStefano had a clear and unobstructed view of the incident involving the Cadillac. Declaration of Ronald DeStefano, Exhibit 33. According to Dr. DeStefano, an African-American policeman got out of his car and aimed his gun at the head of the driver of the Cadillac. *Id.* Dr. DeStefano saw the driver, a female, had one hand on the steering wheel and the other hand on the gearshift. *Id.* She obviously had no weapon. *Id.* Dr. DeStefano then heard two shots. *Id.* According to Dr. DeStefano, the Cadillac was completely pinned in and was not at

risk of running over or harming anyone *Id.* The Cadillac was between a tree, sign post, police car and another car. *Id.* Based on all Dr. DeStefano saw and heard, there was no justification for the shooting. *Id.*

Eyewitness Carolyn C. Aheong testified the Cadillac could not have escaped based on the placement of the second patrol vehicle. Deposition of Carolyn Aheong, Exhibit 21 at 43-44. Aheong also testified there were no bystanders in the area near the palm tree where the Cadillac was stuck. *Id.* at 49. Aheong did not see Johnson pound on the window. *Id.* at 46-47.

Numerous eyewitnesses provided statements that police fired even though the Cadillac was stuck. William Grant stated the Cadillac was hardly moving back and forth when police fired. Exhibit 22 at 1046. Grant stated the officers were in no danger when police fired. *Id.* at 1050. Grant also described the Cadillac's speed during the chase as "mellow." *Id.* at1044. Grant stated that DeLara collided with Kaina. *Id.*

Ann Sarros stated the Cadillac was "rocking backwards" but was "stuck on something, either a tree or a sign" when police fired. Exhibit 24 at 780. Nicole Bennett stated the Cadillac was "boxed in" and "[h]ad nowhere to go." Exhibit 25 at 784. Kirsteen J. Carlson stated that when police fired, the Cadillac "had stopped. But there was maybe three or four jerk back and forths. But within, only

like three feet, back and forth, back and forth." Exhibit 35 at 1078-1080. Carlson said police had no reason to shoot and did so without warning. *Id.* Senica D. DeStefano stated the police officer was not in danger from the Cadillac, which was trapped with nowhere to go. Exhibit 36 at 783. A man approached Johnson after Johnson fired and excitedly yelled"What the fuck did you just do?!" Exhibit 3 at 122.

F. Expert Testimony

1. D.P. Van Blaricom

D.P. Van Blaricom, Plaintiffs' retained expert, is a police practices expert who served as Chief of Police of the Bellevue, Washington police force for ten years which capped a career in police work lasting nearly 30 years. Van Blaricom thoroughly reviewed the facts and circumstances of this case and opined the use of deadly force by Johnson and DeLara was unjustified and unreasonable because Kaina posed no immediate threat of serious bodily injury or death to anyone. Exhibit 32, Van Blaricom declaration at ¶ 10. *See also* report attached for balance of his opinions.

In addition, based on the training records produced and testimony of Johnson and DeLara, Van Blaricom opined that MPD's use of lethal force training is so inadequate as to violate constitutional requirements, that MPD's officers are

trained to use unreasonable force, and that such inadequate training was a substantial factor in causing Kaina's death. *Id.* at ¶ 11.

2. David Yoshida

Defense accident reconstructionist David Yoshida has testified to a reasonable engineering probability that the Cadillac was **not reversing** when shots were fired, but rather, in fact, was **moving forward**. Exhibit 20 at 37-39. Accordingly, the Cadillac **was not backing toward anyone at the time deadly force was used**. Police photographs of the Cadillac's rear-end, front-end and side reveal almost no appreciable damage to the Cadillac.[5] Yoshida says the Cadillac was moving between 5 and 10 mph. Exhibit 20 at 64-65.

3. Robert Fonzi

Defendants' police practices' expert Robert Fonzi has testified that if Johnson did not believe that DeLara was in imminent danger of being struck by the "reversing Cadillac," then the use of lethal force by Johnson would be unreasonable and unjustified. Exhibit 23 at 95. Fonzi candidly admitted Johnson's credibility is a jury issue. *Id.* at 95. Fonzi stated that if an officer has complaints made against him, there may be a need for additional training. *Id.* at 50-51. Fonzi also testified that insufficient training of officers can lead directly to

[5]Note the extremely small dimple on the left side of the rear bumper. Exhibit 17.

the unnecessary death of suspects and can cause an officer to overreact or panic. *Id.* at 56.

G. DeLara Testimony Regarding Incident

DeLara parked closely behind the Cadillac. Exhibit 16 at 70. The Cadillac, at 5 to 10 mph, reversed into the front left side of the DeLara cruiser. The Cadillac then went forward and DeLara exited his car and moved toward the **rear of the Cadillac** and the front of his cruiser. *Id.* at 89-91. DeLara admits putting himself in the zone of danger and admits he had ample opportunity to instead simply run around the rear of **Johnson's** car to join Johnson next to the Cadillac. *Id.* DeLara then moved from behind the rear of the Cadillac to a position along side Johnson outside the driver's door. *Id.* at 99-100. DeLara stood at the driver's door, saw Kaina's position in the car, saw her right hand on the gearshift, her left hand on the wheel, and held his gun with both arms, extended, pointed at Kaina. *Id.* DeLara did not shout a warning at Kaina. *Id.* at 74-75. DeLara was in no danger of being hit, and knew of no one in such danger when he fired. *Id.* at 100. DeLara did not shoot until Johnson shot. *Id.* at 102. DeLara only fired **because** Johnson's gun went off. *Id.* It is uncontroverted that

DeLara was **not behind the Cadillac** when shots were fired. *Id.* at 99-102.[6]

H. Johnson Testimony Regarding Incident

Johnson was debriefed by detectives on January 24, 2004, the day following the shooting. *See* Exhibit 27. The sole reason Johnson shot at Kaina was because he claims he believed DeLara was behind the reversing Cadillac. Exhibit 3 at 118; Exhibit 27 at 900, 903. According to Defendants' expert Robert Fonzi, if Johnson fabricated that belief, then his use of deadly force was unreasonable and unjustified. *See* Exhibit 23 at 95. DeLara was not behind the Cadillac when shots were fired. The shots were fired, one from Johnson and one from DeLara, nearly simultaneously. *See* Exhibit 16 at 103. Johnson admits he himself was not in danger. Exhibit 3 at 116; Exhibit 27 at 907-908. Johnson admitted that during the pursuit Kaina "was kind a operating the vehicle kind of good." Exhibit 3 at 86; Exhibit 27 at 893.

I. County Admissions

The County admits that at all times, Johnson and DeLara were acting within the course and scope of their employment when they used deadly force

[6]The County will likely argue that Johnson's disciplinary record is irrelevant because it was DeLara who shot and killed Ms. Kaina according to Plaintiffs' expert. However, there is no evidence establishing that DeLara in fact fired the fatal shot. Moreover, when two defendants act jointly to cause a single harm both are held liable. *Restatement (Second) Torts*, § 433(B) (1965). That is particularly true in this case where DeLara only fired because Johnson fired.

against Kaina. The County admits that Johnson and DeLara were acting consistently with training provided by the MPD in their use of deadly force. *See* Exhibit 28. Remarkably, Chief Phillips did not know whether his officers were trained to assess deadly force use based on an objective or subjective standard. Exhibit 4 at 134.

## III. ARGUMENT

### A. Plaintiffs' Claims Under 42 U.S.C. § 1983

The facts and reasonable inferences, viewed in the light most favorable to Plaintiffs, demonstrate that summary judgment is not warranted. Eyewitness testimony establishes that the Kaina vehicle was pinned in and stuck with no ability to flee the scene. DeLara, by his own testimony, was not behind the Cadillac when shots were fired. The Defendants' expert accident reconstructionist admits the car was traveling **forward**, not backward, as Johnson and DeLara claim, when shots were fired. There is no evidence that anyone was standing **in front** of the Cadillac and therefore in imminent danger when shots were fired. Given the conflict as to whether there was imminent danger to anyone, summary judgment is inappropriate.

As to the County's liability, on the facts established, it is apparent that reasonable juror may conclude that the County was deliberately indifferent to the

need to train officers in the use of deadly force and the failure to do so led directly to the violation of Kaina's Fourth Amendment rights. The failure to adequately train is manifest. Johnson was trained that a **subjective** rather than an **objective** standard was to inform a police officer's discretion in using deadly force. That training is directly contrary to law. *See infra.* There was no ongoing training after recruit school in the use of deadly force. Furthermore, the County ratified the conduct of the officers by admitting they acted properly and consistently with their training. If so, the County is liable under the theory of ratification.

1. Johnson And DeLara Are Individually Liable

The Supreme Court held in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1964 (1985) that deadly "[f]orce **may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.** *Id.* at 3, 105 S.Ct. at 1697 (emphasis added). In *Garner*, an officer fatally shot a suspect in the head as he fled. *Id.* The Supreme Court held this was unreasonable. "**Where the suspect poses no immediate threat** to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.* at 11, 105 S. Ct. at 1702 (emphasis added).

Johnson and De Lara's use of deadly force fails the *Garner* test. First, deadly force was unnecessary to prevent Kaina's escape because she was already immobilized; her vehicle was stuck, and blocked in by police cars and other obstructions. Less dramatic alternatives to deadly force were available to but went unused by the officers.[7] The officers never attempted to shatter the driver's side window with their handgun or baton, or even to open the driver's door, before firing. Exhibit 3, 107-111; Exhibit 16 at 105-107. Eyewitnesses state no warning was given to Kaina. Exhibit 21 at 46-47; Exhibit 35 at 1078.

Second, the officers did not have probable cause to believe Kaina posed an immediate threat to anyone. Johnson admitted he was not in danger when he fired. Numerous witnesses say the Cadillac was pinned in and stuck. Kaina's hands were clearly visible and she was obviously not armed. Johnson's testimony that the vehicle's tires "suddenly caught and the vehicle began moving backwards" is contradicted by the County's own expert that the car **went forward** when shots were fired. Johnson told investigators the next day the only reason he fired was to protect DeLara, yet DeLara was standing right next to him, out of danger, outside

---

[7] Even the District Court that originally ruled in *Garner* the officer was justified in shooting the suspect did so only after finding the officer had no alternative means to capture the suspect: "The District Court concluded that Hymon was justified in shooting Garner because state law allows, and the Federal Constitution does not forbid, the use of deadly force to prevent the escape of a fleeing felony suspect **if no alternative means of apprehension is available**." *Garner* at 20, 105 S.Ct. at 1706.

the Cadillac driver's door.

De Lara did not have probable cause to believe Kaina posed an immediate threat to anyone. De Lara in his affidavit stated he stepped in back of Kaina's vehicle and "I thought that I was going to die." Yet De Lara testified at deposition that he fired as he stood next to Johnson, alongside the Cadillac driver's door (**not** behind it) and only fired because Johnson did.

Moreover, De Lara admitted he created whatever risk there may have been to himself by stepping behind the vehicle. An officer who creates an unreasonable risk of harm may not use that risk to justify using deadly force. In *Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1994), the Court denied qualified immunity because the officer created the risk:

> The facts, read favorably to the plaintiffs, cannot support a reasonable officer's belief that it was permissible to use deadly force to seize Starks. The key dispute for the fact finder will be whether Black stepped in front of Starks' rapidly moving cab, leaving Starks no time to brake. If he did, **then Officer Black would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect him**[.] n1 Whether the cab presented a threat of serious physical harm has not been conclusively established in any event. First, Black moved out of the path of the car without being struck. Second, it is unclear how fast the cab was moving, even with a floored accelerator, from a full stop after less than ten feet. These facts should also be

> settled by the fact finder. Black cannot be granted immunity because, again taking the plaintiffs' version of the facts, his own unreasonable action prompted the danger he faced. **Police officers who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized for the use of deadly force.**

*Id.* at 234. (Emphasis supplied).

Defendants' reliance on *Brosseau v. Hogan*, 543 U.S. 194, 125 S. Ct. 596 (2004) for qualified immunity is misplaced. The officer in *Brosseau* shattered the windshield of the suspect's car with her handgun, struck him on the head, and attempted to grab his keys. *Brosseau* at 588-589, 125 S.Ct. at 597-598. Def's Memo at 16. Johnson and DeLara did not warn Kaina. They did not attempt to break the glass or to open the door, let alone attempt to grab the keys. Most importantly, in *Brosseau* the plaintiff was shot **while** driving recklessly and endangering the lives of others. *Id.* Viewing the facts in the light most favorable to Plaintiffs, Johnson and De Lara shot Kaina without warning while she was **immobilized**.

The additional cases relied upon by the officers are distinguishable for similar reasons. In *Scott v. Clay County, Tennessee*, 205 F.3d 867 (6th Cir. 2000), the officer fired only when the "the Chevrolet was racing once again onto the

public motorway." In *Pace v. Capobianco*, 283 F.3d 722 (11th Cir. 2002), officers fired when the space in front of the vehicle was unobstructed and the vehicle was moving forward. In *Dudly v. Eden*, 260 F.3d 722 (6th Cir. 2001), the officer only fired after attempting to open the vehicle's door, and while the vehicle was being driven away. There was also no evidence the officer had the suspect under control.

Moreover, the Supreme Court in *Brosseau* cited to numerous cases decided before Kaina's shooting that denied summary judgment in nearly identical situations, **allowing the jury** to determine whether police acted reasonably. See *Brosseau* at 600, 125 S. Ct. at 590 n.11. In *Cowan v. Breen*, 352 F.3d 756 (2nd Cir. 2003), the Court affirmed a denial of summary judgment to an officer for shooting the suspect driver **even though he claimed the vehicle was driving straight at him.** *Id. at 757-58.*

> Plaintiff-appellee Cowan offers a different version of the facts. She claims that the evidence suggests Breen was not in danger when he fired the second, fatal shot at Cooper. First, Cowan points to evidence showing that Breen was over to the side of the vehicle, perhaps as far away as 11 feet, when he fired the second shot. Plaintiff Cowan claims that the evidence demonstrates that the vehicle was traveling quite slowly as it came towards Breen, and may not even have been moving at all.

*Id.* at 758-59.

In *Abraham v. Raso*, 183 F.3d 279 (3rd Cir. 1999), the Court reversed a grant of summary judgment in favor of an officer. *Id.* at 282. The officer fatally shot a fleeing suspect who two witnesses claimed struck her with his vehicle:

> Kimberly Raso, an off-duty police officer, shot and killed Robert Abraham in a mall parking lot while Abraham was trying to escape from a Macy's store where he had been stealing clothes. **Raso** was working as a mall security guard at the time and **testified that she fired at Abraham because he tried to hit her with his car after she blocked its path.** Abraham's estate alleges that Raso used excessive force. **According to the estate, Raso was not in front of the vehicle, her life was never in danger, and she fired simply to prevent Abraham from evading arrest.** The estate points to physical evidence showing **the bullet shattered the driver's side window, rather than the front windshield**, and struck Abraham in his left arm before passing into his chest. * * * How fast Abraham drove in reverse is also not beyond rational dispute. The District Court stated that Abraham "rammed" into a parked car, and it is true that witnesses testified that Abraham accelerated quickly out of his spot and collided forcefully with a Mustang parked behind him. **But the photographs we have in the record of both Abraham's car and the Mustang do not show any damage to either car beyond smudges of paint on their bumpers.** Based on that physical evidence, a reasonable jury could reject the witnesses' recollections as inaccurate. A more fundamental point is that given the doubts about whether Abraham was

> close to hitting someone when he backed, **the fact that he collided forcefully with a parked car (if it is a fact) does not by itself show that Abraham posed a significant threat of death or serious physical injury to other people**. * * * As the Ninth Circuit has recognized, since the victim of deadly force is unable to testify, **courts should be cautious on summary judgment** to "ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story -- the person shot dead -- is unable to testify." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). "The court may not simply accept what may be a self-serving account by the officer. **It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story**, and consider whether this evidence could convince a rational fact finder that the officer acted unreasonably." *Id. See also Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir. 1992).

Id. at 282; 293; 294 (emphasis added).

> We find instructive the Ninth Circuit's decision in *Hopkins*, a case testing the limits of an officer's self-defensive use of deadly force.
>
> * * *
>
> **The Ninth Circuit held that even apart from a number of disputes about the accuracy of the officer's story which precluded summary judgment, the court could not accept as a matter of law that the officer acted reasonably when he fired the final shots.** Even though Stancill was attacking the officer, "at the time of the second shooting, **it was far from clear that [the officer] reasonably feared for his life.**" *Hopkins*, 958 F.2d at 887.

*Abraham* at 295 (emphasis added).

In *McCaslin v. Wilkins*, 183 F.3d 775 (8th Cir. 1999), the Court affirmed the denial of summary judgment to officers in a high-speed chase case because the facts were in dispute. There, after a high speed chase with police officers and a collision with one of the officer's cars, the suspect's car went down an embankment. The police claimed that the suspect then attempted to drive up the embankment toward the officers and the officers fired killing the suspect. Witnesses disputed the police version of events via affidavits including whether the car drove up the embankment toward the officers. Given the factual disputes, summary judgment was denied.

Recent Ninth Circuit cases hold that whether force used by police was objectively reasonable is a jury question. In *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002), the Court "took this case en banc in order to clarify the law of the circuit regarding excessive force that violates the Fourth Amendment's protections against unreasonable searches and seizures." *Id.* at 1009. In *Robinson,* the district court submitted to the jury the question of whether the force used to seize a suspect was reasonable even though: "The only dispute is whether the officers' use of a drawn gun pointed at Robinson's head from close range constituted excessive force." *Id.* at 1013.

In *Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002), the Court observed:

> Determining whether a police officer's use of force was reasonable or excessive therefore "requires careful attention to the facts and circumstances of each particular case" and a "careful balancing" of an individual's liberty with the government's interest in the application of force. *Id.*; *see Deorle v. Rutherford*, 272 F.3d 1272, 1279-81 (9th Cir. 2001). **Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly. This is because police misconduct cases almost always turn on a jury's credibility determinations. This case is no different.** Although it is undoubtedly true that police officers "are often forced to make split-second judgments," and that therefore "not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers" is a violation of the Fourth Amendment, id. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)), **it is equally true that even where some force is justified, the amount actually used may be excessive.** *P.B. v. Koch*, 96 F.3d 1298, 1303-04 (9th Cir. 1996).

*Santos* at 853 (emphasis added).

Based on the disputed facts and prevailing authority, Plaintiffs respectfully request Johnson and De Lara be denied qualified immunity.

2. County Of Maui Is Liable For Failure To Train Their Police

Kaina's death and the violation of her Fourth Amendment rights resulted directly from Johnson and De Lara's inadequate training in the limits on the use of deadly force, and because the County ignored Johnson's history of violent outbursts and misconduct. The Supreme Court in *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989) held that a municipality may be liable under 42 U.S.C. § 1983 for failing to train police where that failure is the "moving force" behind a constitutional violation, and the municipality showed "deliberate indifference." *Id.* at 388-389, 109 S.Ct. at 1204-1205. The Supreme Court held that failing to train in the use of deadly force may be the "moving force" behind a constitutional violation and show "deliberate indifference" because "the need for more or different training is so obvious" and "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons." *Id.* at 390, 109 S.Ct. at 1025 n. 10.

An objective standard is used to determine whether a municipality is liable for a failure to train and the investigation focuses on the **possibility** of a constitutional violation, and is generally a jury question. *See Gibson v. County of Washoe*, 290 F.ed 1175, 1194-95 (2002), *cert. denied*, *Washoe County of Gibson*,

2003 U.S. LEXIS 609 (U.S. January 13, 2003). The test for liability revolves around deliberate indifference. *See Nauman v. Bugado*, 374 F. Supp. 2d 893, 900 D. Haw. 2005).

The Tenth Circuit offers a four prong test taken from *City of Canton*:

> **To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force**, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training. *Zuchel v. City and County of Denver*, 997 F.2d 730, 734-35 (10th Cir. 1993). See *Canton*, 489 U.S. at 389-91. As regards the second and third requirements, a showing of **specific incidents which establish a pattern of constitutional violations is not necessary** to put the City on notice that its training program is inadequate. **Rather, evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability.** See *Board of County Comm'rs v. Brown*, 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997); *Canton*, 489 U.S. at 390 n.10.

*Allen v. Muskogee*, 119 F.3d 837, 841-42 (10th Cir. 1997), *cert. denied*, *City of Muskogee v. Allen*, 522 U.S. 1148, 118 S. Ct. 1165 (1998).

Plaintiffs' evidence meets the *Allen* test. As to the first prong, shooting an unarmed, immobilized suspect such as Kaina in the head is a constitutional violation. As to the second prong, the use of force against Kaina arose in the context of the capture of a suspect attempting to flee in a vehicle, which is a "usual and recurring situation." Johnson testified to the frequency of dealing with both stolen car and methamphetamine cases as a routine police activity. Exhibit 3 at 44-47. Third, Plaintiffs' expert concluded the County provided inadequate training in the use of deadly force, which amounted to deliberate indifference to Kaina's rights. Exhibit 32 at ¶ 11. Fourth, as the County admitted, Johnson and De Lara acted consistently with their training in shooting Kaina, showing causation between the inadequacy of that training and the violation of Kaina's rights. Exhibit 28. Plaintiff's expert testified that inadequate training caused Johnson and De Lara to fire when unnecessary. Exhibit 32 at ¶ 11. Defendants' expert Fonzi stated inadequate training causes unnecessary danger to suspects as officers overreact. Exhibit 23 at 56.

Numerous courts have followed *City of Canton* and submitted to the jury the issue of whether a failure to train police incurred municipal liability under 42

U.S.C. § 1983. In *Davis v. Mason County*, 927 F.2d 1473 (9th Cir. 1991), *cert. denied*, *Mason County v. Davis*, 502 U.S. 899, 112 S. Ct. 275 (1991), the Court affirmed a jury verdict finding the county liable under 42 U.S.C. § 1983 for failure to train. The Court explained that the county knew, or should have known, their failure to adequately train officers would lead to constitutional violations, and **that their failure to train amounted to deliberate indifference as a matter of law.** *Davis* at 1482.

As in the case at bar, in *Davis*:

> The issue is not whether the officers had received any training - most of the deputies involved had some training, even if it was minimal at best - **rather the issue is the adequacy of that training.** *City of Canton*, 489 U.S. at 390. **More importantly, while they may have had some training in the use of force, they received no training in the constitutional limits of the use of force.**

*Davis* at 1482-83 (emphasis added).

In *Young v. City of Providence*, 404 F.3d 4 (1st Cir. 2005), the mother of an officer accidentally slain by other officers brought a Fourth Amendment claim against the city for inadequate training. *Id.* at 9. The city presented substantial evidence of training. *Id.* at 16-17. Other evidence, however, raised a genuine issue of material fact as to whether such training actually took place, and if it did,

how effective it actually was. *Id.* at 17-20. The Court reversed a grant of summary judgment for the city. *Id.* at 9-10.

In *Brown v. Gray*, 227 F.3d 1278 (10th Cir. 2000), the Court held that **expert testimony and the officer's own testimony of his inadequate training were sufficient** to support the verdict of municipal liability under 42 U.S.C. § 1983. *Id.* at 1287. The plaintiff's expert testified the city's inadequate training created a dangerous situation in which the shooting was the foreseeable result, thereby establishing the city's "deliberate indifference." *Id.* at 1289-90.

In *Allen*, the Court reversed a grant of summary judgment in favor of defendant city for 42 U.S.C. § 1983 liability. *Id.* at 846. The plaintiff's expert testified "the officers' actions were reckless and totally contrary to proper police practices." *Id.* at 842. The plaintiff's expert, based on the city's admissions, concluded the officers were inadequately trained. *Id.* at 843.

In *Beck v. City of Pittsburgh*, 89 F.3d 966 (3rd Cir. 1996), *cert. denied*, *City of Pittsburgh v. Beck*, 519 U.S. 1151, 117 S. Ct. 1086 (1997), the Court reversed a grant of summary judgment to defendant city on the issue of 42 U.S.C. § 1983 liability. The Court held the plaintiff's **evidence of the officer's past misconduct alone was sufficient to support the claim**:

> In the instant case, Beck argues that **Officer Williams has exhibited a pattern of violent and inappropriate behavior**, with five complaints of excessive use of force in less than five years. These complaints include the Debold incident, which, although it occurred after Beck's experience, **may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force.** Beck asserts that if the City had proper investigative and police disciplining procedures in place, its police, including Williams, would not have pursued a settled practice of applying excessive force in arresting citizens, and Williams, in particular, would not have assaulted him.

*Id.* at 972 (emphasis added).

> **Without more, these written complaints were sufficient** for a reasonable jury to infer that the Chief of Police of Pittsburgh and his department knew, or should have known, of Officer Williams's violent behavior in arresting citizens[.]

*Id.* at 973 (emphasis added).

> **We do conclude, however, that Beck presented sufficient evidence from which a reasonable jury could have inferred that the City of Pittsburgh knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers.** This evidence sufficiently precluded the entry of judgment as a matter of law by the district court.

*Id.* at 976 (emphasis added).

In *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), *cert. denied*, *Bd. of County Comm'rs v. Brown*, 532 U.S. 1007, 121 S. Ct. 1734 (2001), the Court affirmed a jury verdict holding a county liable under 42 U.S.C. § 1983 for failing to train a deputy in the use of force. The deputy had a history of misconduct, including prior arrests, prior motor vehicle violations, and engaging in an excessive number of "take down" arrests. *Id.* at 454-55. The deputy's history was a factor in the Court's decision: "The jury could conclude that this background alerted [the county sheriff] that there was an especially pressing need to train [the deputy], especially with respect to when and how to use force." *Id.* at 458.

Based on the disputed facts and prevailing authority, Plaintiffs respectfully request that the County's Motion for Summary Judgment regarding Plaintiffs' 42 U.S.C. § 1983 claims be denied.

3. County Of Maui Is Liable By Ratification of Officers' Conduct

Chief Phillips stated police acted consistently with their training and did nothing wrong in shooting Kaina. Exhibit 4 at 12. The County made the same admissions. Exhibit 28. County of Maui ratified the unconstitutional acts of its police thereby establishing such as its official policy:

> A municipality also can be liable for **an isolated constitutional violation** if the final policymaker "ratified" a subordinate's actions. **Ordinarily, ratification is a question for the jury.**

*Christie v. Iopa*, 176 F.3d 1231, 1238-39 (9th Cir. 1999) (citations omitted) (emphasis added), *cert. denied*, *County of Hawaii v. Anderson*, 528 U.S. 928, 120 S. Ct. 324 (1999).

B. Plaintiffs' Remaining Tort Claims Are Valid

1. Assault And Battery

Kaina was unjustifiably shot in the head, which constitutes "an unlawful touching" under *Ozaki v. Association of Apartment Owners*, 87 Hawai'i 273, 289, 954 P.2d 652, 668 (Appl. 1998), the standard submitted by Defendants. Def. Memo at 26. The County is liable for the torts of their police under *respondeat superior*. *See Pourny v. Maui Police Dep't,* 127 F. Supp. 2d 1129, 1145 (2000). Therefore, Defendant's Motion may be denied as to Count IV.

2. Intentional And Negligent Infliction Of Emotional Distress

Plaintiffs' meet the tests for both torts under the standards submitted by Defendants. Def. Memo at 27-28. The officers intentionally shot Kaina. Such shooting was without just cause or excuse considering she was immobilized and was therefore outrageous. The shooting, predictably, caused extreme emotional

distress to Plaintiffs, all close family members, particularly Kaina's three children. Exhibit 37. Defendants cite evidence of poor relationships between Kaina and some of her family, but at the least, this is a question of fact for the jury, and summary judgment is inappropriate.

3. Plaintiffs Have Valid Tort Claims For Negligent Supervision[7]

*Fraser v. County of Maui*, 855 F. Supp. 1167 (D. of Hawaii, 1994) is controlling:

> Hawaii recognizes both a cause of action for negligent employment, and one for negligent supervision.**** Likewise, the Hawaii Supreme Court imposes a foreseeability requirement with regard to the negligent supervision claim. In *Abraham*, the Hawaii Supreme Court stated: "The relationship of employer and employee may, under certain circumstances, create a duty on the employer to control the conduct of the employee. . ."

*Fraser* at 855 F. Supp. at 1184.

The Supreme Court in *Canton* held the County has a duty to train police in deadly force because to "a moral certainty" it is foreseeable police will use deadly force. Plaintiffs have submitted substantial evidence the County breached this duty. Also, Defendants' own expert testified repeated violations by an officer (such as Johnson's violent history) may trigger the need for increased training, yet

[7] Plaintiffs concede summary judgment as to negligent hiring.

the County provided none. Defendants' Motion as to Negligent Supervision may therefore be denied.

4. Plaintiffs' Wrongful Death Claim Is Valid[9]

H.R.S. § 663-3 allows this claim "[w]hen the death of a person is caused by the wrongful act, neglect, or default of any person". *Id.* As argued, Defendants unjustifiably killed Lisa Kaina, therefore this claim is valid.

5. Plaintiffs On Punitive Damages[10]

It is well-established Johnson and De Lara are liable for punitive damages: "We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983). *See also Larez v. Los Angeles*, 946 F.2d 630 (9th Cir. Cal. 1991). Johnson and De Lara showed "callous indifference" by shooting an unarmed, immobilized woman in the head.

[9] Plaintiffs concede summary judgment as to the wrongful death claim only in regards to Andy, Jesse and Amos Tomita.

[10] Plaintiffs concede the County is not liable for punitive damages.

DATED: Honolulu, Hawaii, January 5, 2006.

DAVID J. GIERLACH
BRIAN A. DUUS
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MEGAN KAINA, KAMAILE KAINA, KAWIKA KAINA through their Next Friend, MALIA KAINA; ISAAC KAINA; AVON KEALOHA; MITSUO TOMITA; ANDY TOMITA; JESSE TOMITA; AMOS TOMITA AND AVON KEALOHA AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LISA TOMITA KAINA,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MAUI; COUNTY OF MAUI POLICE DEPARTMENT; ; NELSON JOHNSON; ALLEN DE LARA; AND DOE DEFENDANTS 3-100 DEFENDANTS,<br><br>Defendants. | CIVIL NO. CV 04 00608 DAE<br>[Non-Motor Vehicle Tort]<br><br>CERTIFICATE OF SERVICE |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document will be duly served by FACSIMILE TRANSMISSION and/or UNITED STATES MAIL, postage prepaid, to the parties identified below at their last known address on the

date herein indicated:

MOANA M. LUTEY, ESQ. (808) 270-7152
Deputy Corporation Counsel
Department of Corporation Counsel
200 S. High Street
Wailuku, Maui, Hawaii 96793

Attorney for Defendants

DATED: Honolulu, Hawaii, January 5, 2006.

DAVID J. GIERLACH
BRIAN A. DUUS
Attorneys for Plaintiffs