DEPARTMENT OF THE CORPORATION COUNSEL    205

BRIAN T. MOTO        5421
Corporation Counsel
MOANA M. LUTEY       6385
LAUREEN L. MARTIN    5927
Deputy Corporation Counsel
County of Maui
200 S. High Street
Wailuku, Hawaii 96793
Phone:     (808) 270-7740
Fax No.:   (808) 270-7152
moana.lutey@co.maui.hi.us
S:\ALL\MMR\CIV\Kaina\ReplySupportMSJTitlepages.wpd

Attorneys for Defendants COUNTY OF MAUI,
 COUNTY OF MAUI POLICE DEPARTMENT, NELSON
 JOHNSON AND ALLEN DE LARA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 2 2006

at 9 o'clock and 11 min. M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MEGAN KAINA, KAMAILE KAINA,       )    CIVIL NO. CV 04-00608 DAE LEK
KAWIKA KAINA through their Next   )    (Other Non-motor vehicle
Friend, MALIA KAINA; ISAAC        )    tort)
KAINA; AVON KEALOHA; MITSUO       )
TOMITA; ANDY TOMITA; JESSE        )
TOMITA; AMOS TOMITA AND AVON      )    COUNTY DEFENDANTS' REPLY
KEALOHA as Personal               )    MEMORANDUM IN SUPPORT OF
Representative of the Estate of   )    THEIR MOTION FOR SUMMARY
LISA TOMITA KAINA,                )    JUDGMENT; EXHIBITS "OO-
                                  )    RR";CERTIFICATE OF
                Plaintiffs,       )    COMPLIANCE; CERTIFICATE OF
                                  )    SERVICE
        vs.                       )
                                  )
                                  )    Hearing:
COUNTY OF MAUI; COUNTY OF MAUI    )
POLICE DEPARTMENT; NELSON         )    Date: January 23, 2006
JOHNSON; ALLEN DE LARA; AND DOE   )    Time: 9:45 a.m.
DEFENDANTS 3-100,                 )    Judge: Honorable David A.
                                  )    Ezra
                Defendants        )
                                  )
_____)

## TABLE OF CONTENTS

PAGE

A.  PLAINTIFFS HAVE INTENTIONALLY MISREPRESENTED
    JOHNSON'S EMPLOYMENT HISTORY . . . . . . . . . . . .   2

    1.  JOHNSON'S ALLEGED MISCONDUCT . . . . . . . . . .   2

    2.  JOHNSON'S JOB PERFORMANCE IS ADMIRABLE  . . . . .   6

B.  THE OFFICERS RECEIVED EXTENSIVE TRAINING . . . . . . .   7

C.  PLAINTIFFS HAVE FAILED TO ACCURATELY STATE THE UNDISPUTED
    FACTS . . . . . . . . . . . . . . . . . . . . . . . .   8

D.  THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY . . . .  10

    1.  PLAINTIFFS FAIL TO SHOW A CLEARLY ESTABLISHED RIGHT  10

E.  INADMISSIBLE EVIDENCE SHOULD BE DISREGARDED . . . . . .  16

F.  THE DECLARATION OF BLARICOM SHOULD BE DISREGARDED . . .  17

    1.  OPINIONS EXPRESSED BY BLARICOM WERE NOT DISCLOSED BY
        THE DEADLINE  . . . . . . . . . . . . . . . . . .  17

    2.  SOME OPINIONS EXPRESSED BY BLARICOM ARE IMPROPER LEGAL
        CONCLUSIONS . . . . . . . . . . . . . . . . . . .  18

    3.  BLARICOM RELIES UPON AN INCORRECT VERSION OF THE
        FACTS . . . . . . . . . . . . . . . . . . . . . .  19

## TABLE OF AUTHORITIES

## CASES

Page

Abraham v. Raso, 183 F.3d 279 (3rd Cir. 1999) . . . . . .    12

Beck v. City of Pittsburgh, 89 F.3d 966 (3rd Cir. 1996) . . .    7

Billington vs. Smith, 292 F.3d 1177, 1190
   (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . 16, 20

Brosseau v. Haugen, 543 U.S. 194,  125 S.Ct. 596,
   598 160 L. Ed. 2d 583 (2004) . . . . . . . . . . . . . . .    13

Brown v. Bryan County, OK, 219 F.3d 450 (5th Cir. 2000) . . .    7

Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894,
   57 L.Ed.2d 895 (1978) . . . . . . . . . . . . . . . .    14

Colvin v. U.S., 479 F.2d 998, 1003 (9th Cir. 1973) . . . . .    16

Cowan v. Breen, 352 F.3d 756 (2nd Cir. 2003). . . . . . . 10, 12

Deorle v. Rutherford, 272 F.3d 1272, 1280 (9th Cir. 2001). . .    11

Estate of Starks v. Enyart, 5 F.3d 230 (7th Cir. 1994). . . .    15

Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). . . .    16

Gonzalez v. Pierce County, 2005 WL 2088367 (W.D.Wash. 2005). . 19

Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865,
   104 L. Ed. 2d 443 (1989). . . . . . . . . . . . . . . .    18

Hangarter v. Provident Life and Accident Ins. Co.,
   373 F.3d 998, 1016 (9th Cir. 2004). . . . . . . . . . . 17, 18

Kanae v. Hodson, 294 F.Supp.2d 1179 (D.Haw. 2003). . . . .    20

Keates v. City of Vancouver, 869 P.2d 88, 92,
   73 Wash.App. 257, 265 (Wash.App. 1994). . . . . . . . . .    18

Klein v. Ryan, 847 F.2d 368, 373 (7th Cir. 1988) . . . . . .     9

McCaslin v. Williams, 183 F.3d 775, 778 (8th Cir. 1999) . . .    12

Miller v. Field, 35 F.3d 1088 (6th Cir. 1994). . . . . . . .    16

Mitchell v. Forsyth, 475 U.S. 511, 526, 105 S.Ct. 2806, 86
L.Ed.2d 411 (1985). . . . . . . . . . . . . . . . . . . .    15

-i-

Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053,
    1066 n.10 (9th Cir. 2002) . . . . . . . . . . . . . . . . .   17

Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). .   16

Peterson v. City of Plymouth, 60 F.3d 469,
    475 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . .   18

Reeves v. Churchich, 331 F.Supp.2d 1347, 1353
    (D.Utah 2004) . . . . . . . . . . . . . . . . . . . . . 18, 19

Robinson v. Solano County, 278 F.3d 1007 (9th Cir. 2002). . .   14

Santos v. Gates, 287 F.3d 846 (9th Cir. 2002). . . . . . . .   14

Saucier v. Katz, 533 U.S. at 206 . . . . . . . . . . . . . .   14

Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1388
    (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . .   9

U.S. v. Lewis, 368 F.3d 1102, 1105 (9th Cir. 2004) . . . . .   15

U.S. v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983) . . . . .   16

Volk v. County of Pierce, 2005 WL 2291121 (W.D.Wash. 2005). .   16

Whitted v. General Motors Corp., 58 F.3d 1200, 1204 (7th Cir.
1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

## FEDERAL RULES

                                                              Page
Fed.R.Evd. 402 and 403 . . . . . . . . . . . . . . . . . . .    2

Fed.R.Evd.Civ.P. 56(e) . . . . . . . . . . . . . . . . . . .   16

DEPARTMENT OF THE CORPORATION COUNSEL   205

BRIAN T. MOTO        5421
Corporation Counsel
MOANA M. LUTEY       6385
LAUREEN L. MARTIN    5927
Deputies Corporation Counsel
County of Maui
200 S. High Street
Wailuku, Hawaii 96793
Phone:   (808) 270-7740
Fax No.: (808) 270-7152
moana.lutey@co.maui.hi.us
S:\ALL\MMR\CIV\Kaina\Reply Memo3.wpd

Attorneys for Defendants COUNTY OF MAUI,
 COUNTY OF MAUI POLICE DEPARTMENT, NELSON
 JOHNSON AND ALLEN DE LARA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MEGAN KAINA, KAMAILE KAINA, KAWIKA KAINA through their Next Friend, MALIA KAINA; ISAAC KAINA; AVON KEALOHA; MITSUO TOMITA; ANDY TOMITA; JESSE TOMITA; AMOS TOMITA AND AVON KEALOHA as Personal Representative of the Estate of LISA TOMITA KAINA,<br><br>         Plaintiffs,<br><br>   vs.<br><br>COUNTY OF MAUI; COUNTY OF MAUI POLICE DEPARTMENT; NELSON JOHNSON; ALLEN DE LARA; AND DOE DEFENDANTS 3-100,<br><br>         Defendants | CIVIL NO. CV 04-00608 DAE LEK (Other Non-motor vehicle tort)<br><br>COUNTY DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT |

**REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

A.   **PLAINTIFFS HAVE INTENTIONALLY MISREPRESENTED JOHNSON'S EMPLOYMENT HISTORY**

Realizing the facts of this case do not support a cause of action against the Defendants, Plaintiffs focus on "facts" which are completely irrelevant and unfounded.[1] Plaintiffs' slanderous misrepresentation of Johnson's employment record is a blatant attempt to prejudice and confuse this Court. Fortunately, it is an experienced Judge who will determine the relevance and accuracy of Plaintiffs' "facts" and not a jury.[2]

Despite Plaintiffs' exhaustive efforts, **they have been unable to point to a single sustained complaint against Johnson which involves a shooting or excessive force.**[3]

### 1. JOHNSON'S ALLEGED MISCONDUCT

#### a. Unsubstantiated Claims

##### 1. Damaged Truck:

In 2002 Johnson was involved an accident damaging his vehicle.[4] Incredibly, Plaintiffs allege that Johnson committed extortion when he stated "if we don't deal with this, I can make it worse for everybody and claim I was injured". This is an

---

[1]Plaintiffs focus on Johnson, although it is undisputed that DeLara fired the fatal shot. ¶10(e) of report attached Exhibit "32" which states ". . .shooter DeLara also fired a single shot. . .that was more probably than not the fatal shot. . .". Plaintiffs' expert confirmed this on 1/12/06 at his deposition. Relevant pages will be submitted. This deposition was previously scheduled twice before, but did not go forward through no fault of the Defendants.

[2]Defendants will file a motion in limine precluding evidence of these alleged incidents. These incidents are irrelevant and should be excluded pursuant to Fed.R.Evid. 402 and 403.

[3]Johnson has been a police officer for over ten years.

[4]Officer Johnson was off duty at the time.

2

unsubstantiated claim and the complaining witness withdrew his complaint.  Plaintiffs have failed to establish that Johnson was not injured.  Therefore, there is clearly no evidence of wrongdoing by Johnson. In addition, MPD could not investigate further since the witness withdrew the complaint.

### 2.  <u>Kicked Door</u>:

Another unsubstantiated claim relied upon by Plaintiffs occurred in 2002 involving Heue.  Plaintiffs claim that Johnson kicked Heue in the head.  This is a blatant lie.  Exhibit "8" demonstrates that Hueu stated the first officer who entered the bathroom kicked him.  Although Johnson kicked in the bathroom door, it was Officer Acosta who first entered the bathroom.  Johnson wasn't even the second officer to enter the bathroom.  P.2622 of Exhibit "AA".  Notably, despite being advised to file a complaint, Heue did not.

### 3.  <u>Withdrawn Complaint</u>:

Plaintiffs allege that in 2000 Traci Johnson reported being assaulted by Johnson.  She refused to cooperate and no charges were brought against Johnson.  Despite, no prosecution, the MPD contacted her in order to investigate the matter further.  She refused to make any comments.[5]  Exhibit "6".  Similar to the criminal case, the internal investigation could not proceed. Therefore, this is an unsubstantiated claim which was could not

---

[5]Johnson acknowledged getting into a fight and throwing his wedding ring.  However, he adamantly denied any physical abuse. Exhibit "BB".  Given the inconsistent versions of what happened, and the withdrawn complaint, MPD obviously could not discipline Johnson.

result in discipline.

### b.    Incidents which Johnson Was Disciplined

#### 1.    "Butt Cheeks" Incident

Plaintiffs attempt to rely upon an argument between two police officers over a basketball game which occurred in 2002, while the officers were **off duty**.  Johnson was apparently frustrated with some of the calls by the referee and was complaining.  The referee turned towards Johnson and exposed his "butt cheeks".  Fortunately, there was minimal physical contact.  Exhibit "CC".  Despite being off duty and at a basketball game, MPD conducted a throughout investigation of the "butt cheeks" incident and disciplined both officers.  Exhibit "2".  Incredibly Plaintiffs argue that MPD failed to take sufficient action.

#### 2.    Threats by a High School Student

Exhibit "1" relates to Johnson being disciplined for "challenging a student to a fight".  Although Johnson was disciplined, Plaintiffs argue that it was insufficient. Plaintiffs' conveniently ignore that the student threatened to punch Johnson.  Exhibit "DD".[6]  It is important to note that the principal thanked Johnson for his efforts.  Exhibit "LL".

#### 3.    Rudeness

Plaintiffs allege that in 1999, Johnson made mocking and belittling remarks to a dispatcher.  Three separate remarks were made: 1) Johnson "snapped" at the dispatcher when she failed to timely cancel the request for back-up, 2) Johnson stated

---

[6]There is no indication Officer Johnson was angry.

4

"incredible" when the dispatcher failed to timely run a check for a bench warrant, and 3) Johnson questioned why he had been assigned to an accident outside of his area.    Exhibit "5".    Despite the minor nature of these remarks, MPD disciplined Johnson.

### 4.    Three Car Accidents

These car accidents are obviously irrelevant and therefore, will not be addressed.

Based upon the evidence submitted by Plaintiffs, Johnson has been disciplined six times, three for motor vehicle accidents, once for the "butt cheeks incident", once for being "rude" and once for improperly reacting when a high school student repeatedly stated that he was going to punch him.[7]

Clearly, none of these incidents are relevant.    Johnson's driving did not cause Kaina's death.    Nor did Kaina make unfair calls while refereeing or flash her "butt cheeks".    In addition, there's nothing in the complaint alleging Johnson was rude.    It is ridiculous to argue that these incidents demonstrate "anger management issues".    Even assuming they did, Johnson didn't fire his gun because he was angry.    He fired because he believed DeLara was in danger.    In any event, as noted, Johnson didn't even fire

---

[7]Plaintiffs allege Johnson has 12 sustained disciplinary actions.    It is unclear how Plaintiffs calculated this number. Plaintiffs have failed to put forth any facts to support any additional sustained complaints.

Pursuant to SHOPO contract, MPD must remove disciplinary actions from personnel files after 2-4 years.    Therefore, discipline beyond 2-4 years can not be considered for progressive discipline.    Exhibits "OO" and "PP".

5

the fatal shot.[8]    Therefore, these incidents are completely irrelevant and must be disregarded.

### 2.    JOHNSON'S JOB PERFORMANCE IS ADMIRABLE

Plaintiffs incorrectly state that Johnson was rated "less than satisfactory" in "Coping with Stress" and "Working "Relationships with People".  A review of the exhibits demonstrate that none of the reviews state "less than satisfactory".  Exhibits "10"-"12". Rather, the reviewer simply rated him a 2 on a scale of 1 to 5.

Plaintiffs ignore other evaluations during this period which rated Johnson a 3 or 4.[9]  Exhibits "EE", "FF" and "GG".  One review indicates "successfully copes with demands and pressures from superiors, peers and citizens."  Exhibit "EE".

In addition to having "satisfactory" or "more than satisfactory" reviews, Johnson has been recognized for his good work.  On December 31, 2002, he was recognized for assisting with recruit training.  Exhibit "HH".

On July 27, 2002, a citizen wrote regarding Johnson (and others) stating he ". . .handled the situation both promptly and diplomatically."  Exhibit "II".  Additional comments received from citizens are attached as Exhibits "JJ", "KK", "LL", "MM" and "NN".

It is clear that Johnson's job performance is admirable and Plaintiffs' attempts to portray Johnson as incompetent and unable to deal with stress are disgraceful.

---

[8]Interestingly, Plaintiffs have put forth no performance reviews or disciplinary actions against DeLara, the officer who fired the fatal shot.

[9]Exhibit "GG" is the last review before the incident.

Plaintiffs rely upon <u>Brown v. Bryan County, OK</u>, 219 F.3d 450 (5th Cir. 2000). However, the officer in <u>Brown</u>:

> ... had been arrested for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, driving with a suspended license, and nine moving traffic violations. At the time he was hired, [the officer] was in violation of the terms of his probation; for that reason, he had an outstanding warrant for his arrest.

<u>Id</u>. at 754-755.

This is in stark contrast to Johnson, who does not have any criminal convictions or even charges.

<u>Beck v. City of Pittsburgh</u>, 89 F.3d 966 (3rd Cir. 1996), is equally irrelevant. There, the multiple complaints received regarding the defendant officer involved **using excessive force to make arrests**, which was precisely what the <u>Beck</u> plaintiff alleged. <u>Id</u>. at 969.

As noted, there is not a single sustained complaint against Johnson involving excessive force or a shooting. Therefore, unlike <u>Beck</u>, there are no prior incidents which are even remotely similar.

B.    <u>THE OFFICERS RECEIVED EXTENSIVE TRAINING</u>

Plaintiffs argue that the Officers did not receive training after recruit school regarding the lethal use of force.[10] However,

---

[10]The Officers acted appropriately demonstrating they have been properly trained. There is no evidence that the training was deficient. However, even if it were, there's no causation since the Officers acted appropriately.

7

the only evidence Plaintiffs provide are statements by the Officers that they can not recall whether they received additional training. P.36 of Exhibit "3" and p. 29 of Exhibit "16".

Plaintiffs also make the absurd argument that the Officers have been trained to apply a subjective rather than objective standard. A review of the deposition demonstrates the Officer was asked how to determine what to do. P.42 of Exhibit 13. The officer can only make decisions based upon what he perceives, i.e., a subjective perspective.[11]

Plaintiffs have failed to put forth any admissible evidence that the Officers received inadequate training. It is undisputed the Officers have received extensive training. Exhibits "QQ" and "J".

C.   **PLAINTIFFS HAVE FAILED TO ACCURATELY STATE THE UNDISPUTED FACTS**

Plaintiffs have misrepresented the facts in a desperate attempt to create genuine issues where none exist. For example, Plaintiffs contend that DeLara fired "only because" Johnson fired.[12] Plaintiffs' Concise Statement of Facts ("PConcise"), 10. This is clearly not true. DeLara was asked:

_____

[11]Plaintiffs failed to depose any witness to determine what training was provided.

It is for this Court to determine whether the Officers acted objectively reasonable.

[12]This conflicts with Plaintiffs' expert's claim that DeLara fired "... just to apprehend this driver of the stolen car." Exhibit "32", ¶10(g)(5).

8

Q.    What caused you to shoot?

A.    The driver did not show any signs of
      surrendering or stopping the car.

Exhibit "16", p.102, ln. 23-25.

Plainly, DeLara did not shoot simply because Johnson shot.

Another fact Plaintiffs distort is the claim that neither Johnson nor DeLara warned Kaina before shooting.    PConcise #5. Plaintiffs base this upon 1) deposition of Aheong, 2) statement of Carlson[13] and 3) DeLara's deposition.

However, Aheong, Carlson and DeLara do not state that no warning was given.    None of them mention a warning, but none were asked directly.    Moreover, courts have held that a person's testimony that he did not **hear** a warning is **not** evidence that no warning was given.    *See, e.g*, <u>Klein v. Ryan</u>, 847 F.2d 368, 373 (7th Cir. 1988).

Plaintiffs also claim that no pedestrians were near the area of Kaina's stolen car, relying upon Aheong's deposition.    However, Aheong testified that pedestrians were within 20-25 feet of the area where Kaina's stolen automobile was.    Exhibit 21, p.48. Clearly pedestrians were within the zone of danger.

Importantly, Plaintiffs do not dispute several key facts, including: 1) Kaina drove onto the sidewalk before reversing into

---

[13]This statement is inadmissible.

9

a vehicle[14], 2) Fernandez reported to police that Kaina almost ran her over[15], and 3) there has never been a complaint that Johnson or DeLara discharged their weapons inappropriately.[16]

### D.   THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

#### 1.   PLAINTIFFS FAIL TO SHOW A CLEARLY ESTABLISHED RIGHT

In order to overcome qualified immunity, **plaintiffs bear the burden** of proving a clearly established right which was violated by Johnson and DeLara.  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1388 (9th Cir. 1997).

In attempting to carry their burden, Plaintiffs cite to several cases, all of which are inapposite. In Cowan v. Breen, 352 F.3d 756 (2nd Cir. 2003), the vehicle was not moving and the police officer was not in front of it at the time he fired.  Id. at 759.

Here, however, there is no dispute that Kaina's vehicle was moving at or very near the time she was shot, as she drove it back and forth in an attempt to escape.

Moreover, Plaintiffs ignore the factors used by the courts when determining what amount of force is allowable such as "the severity of the crime at issue," whether the suspect is "actively resisting arrest or attempting to evade arrest by flight," and any other "exigent circumstances [that] existed at the time of the

---

[14]Plaintiffs' Response to Defendant's Concise Statement of Facts ("Response"), 19 & 20.

[15]Response 4 & 5.

[16]Response 36.

arrest." <u>Deorle v. Rutherford</u>, 272 F.3d 1272, 1280 (9th Cir. 2001). These factors support the Officers' conclusion that Kaina posed an imminent threat of death or serious injury.

In <u>Cowan</u>, the driver of the vehicle was not suspected of a serious crime. The officer pulled over the vehicle for erratic driving, and one of its two occupants fled into nearby woods. <u>Id</u>. at 758. The officer chased the person, failed to catch him, and returned to find the vehicle's other occupant attempting to drive away. Therefore, the decedent in <u>Cowan</u> was not a suspect in any crime. However, Kaina was suspected of numerous felonies, including attempted murder.

Also, in <u>Cowan</u> there was no pattern of reckless driving to show that if he escaped he would have posed a risk to the public. Kaina, on the other hand, had driven recklessly, ignoring traffic laws, striking occupied vehicles and nearly running down people. Exhibits "O" and "S".

Plaintiffs attempt to downplay that Kaina nearly ran over Fernandez, pointing out that Kaina merely drove straight at her, and did not swerve. Rather than supporting Plaintiffs position, this shows Kaina's callous indifference to human life. While she did not swerve toward Fernandez, she drove directly at her.[17] It is undisputed that Fernandez would have been struck had she not quickly gotten out of the way. Exhibit "O".

---

[17]Fernandez's heard the engine rev and the vehicle drove toward her at a very fast speed. Exhibit "O".

11

Moreover, an officer's actions are judged by "... the facts known by the officer at the time of his actions." McCaslin v. Williams, 183 F.3d 775, 778 (8th Cir. 1999).  Here, dispatch informed Johnson and DeLara that Fernandez reported Kaina had **"tried to run her over"** and **"aimed the vehicle right at her."** Exhibit "A".  In light of the information available, the Officers reasonably believed Kaina posed a threat to the community.

Similarly, in Abraham v. Raso, 183 F.3d 279 (3rd Cir. 1999) the decedent was suspected of shoplifting and did not recklessly lead the police on a chase or endangered members of the public.  As noted, Kaina was suspected of attempted murder, and several other felonies and endangered the public.

McCaslin v. Williams, 183 F.3d 775 (8th Cir. 1999) involved a suspect who police attempted to pull over after he crossed the center line.  Id. at 777.  The suspect refused to pull over and led police on a chase.  Id.  The suspect did not, however, nearly run down any pedestrians, as Kaina did.

The obvious differences between Cowan, Abraham, McCaslin and the present case compel the conclusion that Johnson and DeLara are entitled to qualified immunity.[18]

---

[18]Even assuming their conduct fell into the "hazy border between excessive and acceptable force," they are still entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 200-201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Plaintiffs observe that in <u>Brosseau v. Haugen</u>, 543 U.S. 194, 125 S.Ct. 596, 598 160 L. Ed. 2d 583 (2004)[19], the officer broke the window of the vehicle, hit the suspect in the head, and attempted to grab the keys.  Plaintiffs neglect to point out that all of this occurred **before** the suspect started the vehicle, obviously making it much safer and easier for the officer to attempt such methods. <u>Id</u>, at 597-598.  Moreover, the suspect was not accused of a serious crime, nor did he nearly run down innocent bystanders.  Clearly Kaina posed a much greater threat to life and limb.[20]

Ultimately, Plaintiffs are simply not able to point to case law sufficient to put Johnson and DeLara on notice that their conduct was illegal.  Therefore, they are entitled to qualified immunity.

### 2.   <u>Kaina Was Not "Blocked In"</u>

Plaintiffs also belabor that certain eyewitnesses stated the Cadillac was blocked in.  However, none of them are qualified to opine on this issue.  This testimony is further undermined by how quickly the incident unfolded, and the failure to fully explain to what degree Kaina was "blocked."  The only witness with expertise on accident reconstruction is David Yoshida.  Yoshida concluded

---

[19]Incorrectly cited as "<u>Brosseau v. Hogan</u>".

[20]See also, <u>McCartor v. City of Kent</u>, 2005 WL 2600421 (W.D.Wash.), finding that the law was **not** clearly established that officer may not use deadly force against a suspect who threatens the safety of others and refuses to yield despite attempts to stop through non-deadly force.  <u>Id</u>. at 10-11.  There is ample evidence to suggest Kaina posed a threat to the safety of others, and none to suggest that she yielded.

that Kaina's vehicle was not blocked.  Exhibit "N".  Moreover, the photographs and diagrams of the scene demonstrate the Cadillac could have escaped.  Exhibits "B" and "E".[21]

Importantly, Kaina was driving back and forth attempting to escape.  Obviously, Kaina believed she would have been able to maneuver her car in order to escape.  This was a strong indication to the officers that her escape was imminent.

Even if these lay opinions are accepted summary judgment still must be granted.  Under qualified immunity, "... officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law." Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), see also, Saucier v. Katz, 533 U.S. at 206 (qualified immunity applies if mistaken belief reasonable).

Therefore, even accepting Plaintiffs' tenuous argument that Kaina was blocked, Johnson and DeLara simply made a reasonable mistake when they believed Kaina was about to escape.  Under qualified immunity, officers are not liable for such mistakes. Id.; Butz, 438 U.S. at 507.

Plaintiffs cite Robinson v. Solano County, 278 F.3d 1007 (9th Cir. 2002) and Santos v. Gates, 287 F.3d 846 (9th Cir. 2002), arguing a jury should determine whether force used by officers is reasonable.  However, Plaintiffs ignore the central purpose of

_____

[21]Blaricom testified in his deposition on 1/12/06 that Kaina would have been able to escape.  Relevant pages of the deposition will be submitted.

qualified immunity.  It is well established that "... an official's qualified immunity is 'an *immunity from suit* rather than a mere defense to liability; like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'"  U.S. v. Lewis, 368 F.3d 1102, 1105 (9th Cir. 2004), *quoting* Mitchell v. Forsyth, 475 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis in Mitchell).

### 3.    Kaina Created the Danger to DeLara.

Plaintiffs also attempt to place the responsibility for this incident on DeLara, because he was briefly behind Kaina's vehicle. There is no support for this argument.

First, Plaintiffs grossly distort the facts to claim that "... DeLara admitted he created whatever risk there may have been to himself by stepping behind the vehicle."[22]  DeLara admitted no such thing.  Rather, DeLara states "I got out and ran to the front of my car, then ran towards the Cadillac."  Exhibit "L".  Importantly, when DeLara first ran behind the Cadillac, it was not moving toward him.  Exhibit "L".

Estate of Starks v. Enyart, 5 F.3d 230 (7th Cir. 1994), is readily distinguishable from the case at the bar.  In Starks, the officer **stepped in front** of Starks' vehicle, "... leaving Starks no time to brake."  Id. at 234.  Here, the undisputed facts show DeLara did not merely step behind Kaina's stolen vehicle.  Rather,

---

[22]Plaintiffs fail to cite to any evidence to support this baseless allegation.

he **ran** a path that briefly put him **behind** the vehicle.  Likewise, the facts show that far from not having time to brake, Kaina put the vehicle in reverse and drove at DeLara while he was behind her. Clearly, it was Kaina that created the risk of harm to DeLara.

Moreover, even if an officer's negligence creates the need for the use of force, "... that negligent act will not transform an otherwise reasonable subsequent use of force into a Fourth Amendment violation."  Billington vs. Smith, 292 F.3d 1177, 1190 (9th Cir. 2002).  Therefore qualified immunity is not lost simply because DeLara ran behind Kaina's stolen automobile.

E.     **INADMISSIBLE EVIDENCE SHOULD BE DISREGARDED**

It is well established that documents must be admissible. Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003), *citing* Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002); Whitted v. General Motors Corp., 58 F.3d 1200, 1204 (7th Cir. 1995), *see also,* Fed.R.Civ.P. 56(e).

Exhibits "24", "25", "26", "27", "31", "35", "36" appear to be from the police report.  Statements contained within a police report are clearly inadmissible hearsay.  *See,* Miller v. Field, 35 F.3d 1088 (6th Cir. 1994); U.S. v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983); Colvin v. U.S., 479 F.2d 998, 1003 (9th Cir. 1973). Therefore, these Exhibits must be disregarded.

F.     **THE DECLARATION OF BLARICOM SHOULD BE DISREGARDED**

In Billington v. Smith, 292 F.3d 1177 (9th Cir. 2002), the Court stated the following:

16

> . . .[T]he fact that an expert disagrees with
> the officer's actions does not render the
> officer's actions unreasonable. . .Together,
> *Scott* and *Reynolds* prevent a plaintiff from
> avoiding summary judgment by simply producing
> an expert's report that an officer's conduct
> leading up to a deadly confrontation was
> imprudent, inappropriate, or even reckless. .
> . [footnotes and quotations deleted].
>
> Id. at 1189 (emphasis added).

Therefore, the declaration of Blaricom, by itself, does not provide a basis to deny the Defendants' motion.  In addition, Blaricom's declaration should be stricken for the following reasons:

### 1.    OPINIONS EXPRESSED BY BLARICOM WERE NOT DISCLOSED BY THE DEADLINE.

Plaintiffs were required to disclose their expert opinions on May 9, 2005.  Exhibit "RR".  However, the parties stipulated to an extension of one week resulting in a deadline of May 16, 2005. Blaricom's Declaration is dated December 19, 2005.[23]  Exhibit "32". That declaration is untimely and, therefore, must be stricken.  In addition, some opinions have never been disclosed prior.

### 2.    SOME OPINIONS EXPRESSED BY BLARICOM ARE IMPROPER LEGAL CONCLUSIONS

"[A]n expert witness cannot give her opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." Hangarter v. Provident Life and Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004), *quoting* Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) (emphasis in original,

---

[23]Plaintiffs did disclose previous amended expert reports from Blaricom, however, the 12/19/05 declaration includes information not previously disclosed.

internal quotations omitted).

Under this rule, an opinion regarding whether the conduct of officers comports with the Fourth Amendment standard of reasonableness is inadmissible. Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995).

Here, Blaricom gives the following legal opinion: "... the shooting of the decedent was an objectively unreasonable use of excessive deadly force." Exhibit "32," ¶10  In addition, Blaricom concludes that, "... the shooters used objectively unreasonable and excessive deadly force under the uncontroverted fact pattern of this incident ..." Exhibit "32", ¶10 (s).

"Excessive force" is a legal term of art, which has particular meaning under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  By opining that the defendant officers used excessive force, Blaricom is plainly making a legal conclusion.  Such an opinion is inadmissable. Hangarter, 373 F.3d at 1016; Peterson, 60 F.3d at 475.

Blaricom has often run afoul of this rule and attempted to offer inadmissible legal conclusions as opinions.  Numerous courts have disregarded his opinions on that basis. See, e.g., Keates v. City of Vancouver, 869 P.2d 88, 92, 73 Wash.App. 257, 265 (Wash.App. 1994); Reeves v. Churchich, 331 F.Supp.2d 1347, 1353 (D.Utah 2004); Volk v. County of Pierce, 2005 WL 2291121 (W.D.Wash. 2005).

18

In <u>Reeves</u>, the court disregarded Blaricom's opinions stating "It is the court - not plaintiffs' expert - that is responsible for determining whether defendants' conduct violates the Fourth Amendment for purposes of the qualified immunity analysis." <u>Reeves</u>, 331 F.Supp.2d at 1353.

The Court in <u>Gonzalez v. Pierce County</u>, 2005 WL 2088367 (W.D.Wash. 2005) also found Blaricom's opinion inadmissible:

> **<u>Mr. Van Blaricom's opinion does not meet the standard of evidentiary reliability ... Van Blaricom's opinion appears to be legal argument rather than expert analysis. It is not helpful to the court on this matter, and certainly, by itself, does not raise issues of fact.</u>** (emphasis added).

> <u>Id</u>. at 6-7.

### 3.    BLARICOM RELIES UPON AN INCORRECT VERSION OF THE FACTS

Blaricom has based his opinions on inaccurate facts. For example, Blaricom refers to the theft of the Cadillac by decedent as being "non violent." Exhibit "32", ¶10(a). However, in the process of stealing the Cadillac from the Hertz rental lot, decedent attempted to run over a Hertz employee. Exhibit "O".

Likewise, Blaricom states that, "...decedent's vehicle had struck a palm tree and was immediately blocked by shooter Johnson's police vehicle to her left and shooter DeLara's police vehicle to her rear." Blaricom is not qualified to render opinions as a traffic accident reconstructionist. Accident reconstructionist, David Yoshida, has opined that decedent's vehicle could have

completed a u-turn and escaped.  Based on Yoshida's opinions, decedent's vehicle was not blocked.  Exhibit "N", ¶10.

Blaricom also argues that DeLara fired a shot, "... just to apprehend this driver of the stolen car."  Exhibit "32", ¶10(g)(5). Blaricom ignores DeLara's testimony. Exhibit "L".  DeLara explains that he shot because he believed that his life and the lives of others were in danger.

Similarly, Blaricom states that, "... it is abundantly clear that the officers shot at the decedent to prevent her escape and not in defense of any imminent risk to themselves or others." Exhibit ""32," ¶10(m).  In addition to ignoring DeLara's testimony, Blaricom also disregards Johnson's testimony. Exhibit "M".

The Court in Kanae v. Hodson, 294 F.Supp.2d 1179 (D.Haw. 2003), noted "Blaricom's report is an interpretation of others' statements. . .Blaricom's conclusion that Hodson was saying he fired first is **questionable**".  Id. at 1188 (emphasis added), *see also*, Billington v. Smith, 292 F.3d 1177 (9th Cir. 2002),(noting that Blaricom had apparently "**padded his numbers**").  Id. at 1183 (emphasis added).

Similar to the Kanae and Billington cases, Blaricom has inaccurately stated the facts in this case.  The "facts" as stated by Blaricom must be disregarded because of the noted inaccuracies and because he does not possess any personal knowledge.

For the reasons contained herein, summary judgment should be granted in Defendants' favor on all of Plaintiffs' claims.

20

DATED:  Wailuku, Maui, Hawaii, January 12, 2006.

                    BRIAN T. MOTO
                    Corporation Counsel
                    Attorney for County Defendants

                    By _____
                       LAUREEN L. MARTIN
                       Deputy Corporation Counsel

21