```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF HAWAII

 3   ----------------------------------------------------

 4   MEGAN KAINA, KAMAILE KAINA, KAWIKA)
     KAINA through their Next Friend;  )
 5   MALIA KAINA; ISAAC KAINA; AVON    )
     KEALOHA; MITSUO TOMITA; ANDY      )
 6   TOMITA; JESSE TOMITA; AMOS TOMITA )
     and AVON KEALOHA as Personal      )
 7   Representative of the Estate of   )
     LISA TOMITA KAINA,                )
 8                                     )
                    Plaintiffs,        )
 9                                     ) No.
            vs.                        )
10                                     ) CV04-00608 DAE LEK
     COUNTY OF MAUI; COUNTY OF MAUI    )
11   POLICE DEPARTMENT; NELSON         )
     JOHNSON; ALLEN DE LARA; and DOE   )
12   DEFENDANTS 3-100,                 )
                                       )
13                  Defendants.        )

14   ----------------------------------------------------

15           Deposition Upon Oral Examination Of

16              DONALD PERRY VAN BLARICOM

17   ----------------------------------------------------

18                10:02 o'clock a.m.

19              Thursday, January 12, 2006

20           600 University Street, Suite 320

21                  Seattle, Washington

22

23

24   REPORTED BY:  Michelle E. Sexton, RPR

25                 CSR 2657
```

```
 1         But all the bullet's really going to tell
 2   you, if it's a hollow point, it will capture some of
 3   the material that it goes through.  So in this case,
 4   the hollow point should have captured glass; in the
 5   case of Johnson's bullet, it should have captured the
 6   upholstery as well.  In the case of DeLara's bullet,
 7   it should have captured glass and then tissue and bone
 8   and tissue from the decedent.
 9         That's really all the bullet's going to tell
10   you, and if it's an intact bullet and you're not
11   firing a Glock, you can probably match it to the
12   particular weapon that fired it.
13      Q.  And the reason you say that DeLara's bullet
14   should have captured tissue from the decedent, it's
15   your opinion that it is more probable than not his
16   bullet that was fatal?
17      A.  Yes.
18      Q.  Let's start going over your opinions.  We're
19   going to start with the May 16th and for the most part
20   it looks to me as though you've got preliminary
21   information consisting mostly of your background and
22   then what you've reviewed?
23      A.  That's typically how I approach it, yeah.
24      Q.  And then you went with how you evaluate
25   these and then when you get to 6, paragraph 6 of
```

1  is that right?
2      A.   That's also correct.
3      Q.   Is there anything else?
4      A.   Not at this point.
5      Q.   And H, "Considering the willingness of both
6  shooters to use objectively unreasonable lethal force,
7  as previously described herein, that 'deliberate
8  indifference' to training was more probably than not a
9  proximate cause of their fatal decision to shoot the
10 decedent"; is that correct?
11     A.   Yeah.
12     Q.   When we're talking about the "willingness"
13 of these shooters, you're talking about the fact that
14 they're standing on the sides of the car, in your
15 opinion they're not at risk, either of them?
16     A.   Correct.
17     Q.   And they just go ahead and fire?
18     A.   To prevent her escape, yes.
19     Q.   It's specifically just to prevent her
20 escape, right?
21     A.   Appears to be the case.
22     Q.   I don't see any more opinions in here.  Is
23 there anything else that you have in terms of opinions
24 now?
25     A.   There is not.

1  of these maneuvers, she tries to turn left to get
2  herself out of there. She's not trying to go up on
3  the sidewalk.
4      Q.  But she does get up on the sidewalk, right?
5      A.  Her front wheels, I do think, at one point,
6  but she's blocked by a sign and a palm tree.
7      Q.  And you think that was an effective block
8  for her forward motions?
9      A.  Seemed to have been. Otherwise she would
10 have gone straight ahead.
11     Q.  But from making a left-hand U-turn, do you
12 think she could have accomplished that?
13     A.  She would have eventually.
14     Q.  Do you have an opinion on how many more
15 maneuvers it would have taken?
16     A.  I have no way to calculate that. Perhaps a
17 reconstructionist could.
18     Q.  What do you believe the officers should have
19 done in this case?
20     A.  Accepted the fact that she was going to get
21 out of that blockade and stepped back to make sure
22 they were clear of any danger, and that others were
23 clear of any danger, but not shoot her.
24     Q.  Should they have moved their vehicles out of
25 the way?

```
 1     A.   I don't think they'd have time to do that,
 2  quite honestly.
 3     Q.   So, just stand at their respective vehicles
 4  and allow her to keep going backwards and forwards
 5  until she made that U-turn and got away?
 6     A.   I'd keep shouting orders at her, but
 7  ultimately she's going to get out of there, because I
 8  can't shoot her under these circumstances.  They're
 9  prohibited from doing so.
10     Q.   Because it's purely for escape?
11     A.   That's right.
12     Q.   How about the fact that she was hitting the
13  red car that was behind her that had two occupants in
14  it, would that change your evaluation of this?
15     A.   Not really, because there's absolutely
16  negligible damage on all the vehicles.  As soon as
17  she'd hit one, she'd reverse direction because her
18  motivation is to escape.  She's not interested in
19  banging up the cars.  She wants to get out of there.
20     Q.   So, they shouldn't have tried to pull her
21  from the vehicle or done anything like that, just let
22  her go?
23     A.   If they could reasonably pull her from the
24  vehicle, I think that would be fine.  I don't know
25  how they're going to accomplish that, but if they
```

```
 1                    C E R T I F I C A T E

 2    STATE OF WASHINGTON  )
                           ) ss.
 3    COUNTY OF KING       )

 4        I, the undersigned Registered Professional

 5    Reporter and an officer of the Court under my

 6    commission as a Notary Public for the State of

 7    Washington, hereby certify that the foregoing

 8    deposition upon oral examination of DONALD PERRY VAN

 9    BLARICOM was taken before me on January 12, 2006, and

10    transcribed under my direction;

11        That the witness was duly sworn by me to testify

12    truthfully; that the transcript of the deposition is a

13    full, true, and correct transcript to the best of my

14    ability; that I am neither attorney for, nor a

15    relative or employee of, any of the parties to the

16    action or any attorney or counsel employed by the

17    parties hereto, nor financially interested in its

18    outcome.

19        IN WITNESS WHEREOF, I have hereunto set my hand

20    and seal this date: January 17, 2006.

21              /S/MICHELLE E. SEXTON

22

23
              NOTARY PUBLIC in and for the State of
24            Washington, residing at Seattle.
              Commission expires August 18, 2006.
25            CSR 2657
```