IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MEGAN KAINA, KAMAILE KAINA, KAWIKA KAINA through their Next Friend, MALIA KAINA, ISAAC KAINA; AVON KEALOHA; MITSUO TOMITA; ANDY TOMITA; JESSE TOMITA; AMOS TOMITA AND AVON KEALOHA as Personal Representative of the Estate of LISA TOMITA KAINA, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF MAUI, COUNTY OF MAUI POLICE DEPARTMENT; NELSON JOHNSON; ALLEN DE LARA; AND DOE DEFENDANTS 3-100, <br><br> Defendants. <br> _____ | CV NO 04-00608 DAE/LEK |

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

   The Court heard Defendants' Motion on January 23, 2005.  David

Gierlach Esq., appeared at the hearing on behalf of Plaintiffs; Deputy Corporation

Counsel Moana Monique Lutey appeared at the hearing on behalf of Defendants.

After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendants' Motion for Summary Judgment with respect to the claims against the County of Maui and the Maui County Police Department for violations of Section 1983 of Title 42 of the United States Code, negligent supervision and training, and punitive damages, and DENIES Defendants' Motion as to the remaining claims.

BACKGROUND

On January 23, 2004, Rosanne Fernandez ("Fernandez"), an employee at Hertz Rent-A-Car, noticed a white Cadillac backing up in the rental car lot in Kahului.  Realizing that the driver was not an employee, Fernandez approached the Cadillac, at which point the driver, decedent Lisa Kaina ("Kaina"), suddenly drove the Cadillac toward her.  Fernandez jumped out of the way to avoid being hit by the Cadillac.  Immediately thereafter, Fernandez dialed 911 and reported that she had almost been run over by a Cadillac stolen from the Hertz rental lot.  The police dispatcher then alerted local authorities in the area that a Hertz employee had almost been run over by a stolen Cadillac.  At the time of the dispatch, Maui County Police Officers Nelson Johnson ("Johnson") and Allen De Lara ("De Lara") were on patrol in Paia.

Soon after hearing the dispatch, Johnson saw the Cadillac headed toward Paia town on Hana Highway. Johnson passed the Cadillac moving in the opposite direction, and when he passed the car, the driver, Kaina, ducked. Officer Johnson then made a U-turn and activated the lights and siren of his patrol car. Kaina, who was at a stoplight at the time, sped off driving in the opposite lane of travel. Johnson pursued at a good distance behind the Cadillac.

At the intersection of Baldwin Avenue and Hana Highway, Kaina made a sudden right turn up Baldwin Avenue. Maui Police Department Officer Allen De Lara ("De Lara") was on the opposite side of Baldwin Avenue at the time facing Kaina. Just before the Cadillac would have collided with De Lara[1], it made a sudden left turn towards the Bank of Hawaii. Kaina then drove the Cadillac onto the sidewalk causing a pedestrian to quickly step out of the way of the vehicle. The Cadillac subsequently reversed off the sidewalk, and then collided with De Lara's vehicle. At the same time, Johnson parked his vehicle at the curb fronting the Bank of Hawaii. Kaina then drove back on the sidewalk and then reversed again colliding with a red Tracker parked next to De Lara's vehicle. The impact

---

[1] While Plaintiffs dispute this point, they have presented no evidence in the record to contradict De Lara's affidavit.

3

with the Tracker forced it into De Lara's vehicle.  Subsequent to hitting the

Tracker, Kaina drove the Cadillac onto the sidewalk colliding with a palm tree.

From this stage, Plaintiffs' and Defendants' account of the events

differ significantly.  When the Cadillac hit the palm tree, it became temporarily

immobilized.  Defendants assert that the wheels of the Cadillac were spinning at a

very rapid rate, but were elevated and therefore unable to gain traction.

(Defendants' Concise Statement of Facts in Support of their Mot. for Sum. J.

("Defendants CSF"), ¶ 23).  At this point, Johnson drew his firearm and

approached the car.  Defendants contend that Johnson pounded on the driver's side

window and yelled at Kaina to stop the car.  (Id. at ¶ 22).  Plaintiffs dispute that

Johnson pounded on the windshield or yelled anything to the driver.  (Plaintiffs'

Response to Defendants' Concise Statement of Facts ("Plaintiffs' RCSF"), ¶ 22).

Officer De Lara also got out of his car and approached the Cadillac from behind.

As De Lara approached the car from behind, Defendants assert that the spinning

wheels caught traction, and that the car began reversing directly toward De Lara.

(Defendants' CSF, ¶ 25).  Johnson believing that the car was going to hit De Lara

and possibly cause him death or great bodily injury, fired a shot at the driver.  (Id.

at ¶¶ 27, 28).  Around the same time or soon thereafter, De Lara ran to the side of

the Cadillac, and fired a single shot into the car.

4

Plaintiffs dispute this factual scenario, and have submitted affidavits and deposition testimony that the car was stuck at the time and merely moving back and forth. (Plaintiffs' RCSF, ¶ 25). Plaintiffs assert that Johnson and De Lara were next to the car when the shots were fired and therefore were themselves in no physical danger.

A single bullet entered the left side of Kaina's head, killing her. Testing on the bullets have provided inconclusive results as to who ultimately filed the lethal shot. The parties disagree as to whether Kaina would have been able to escape had she not been shot. Defendants have submitted evidence that Kaina could have maneuvered the Cadillac to escape and was in fact attempting to do so. (Plaintiffs' Exs. E1, E2, N, R, S, X). Plaintiffs dispute this fact and have submitted deposition testimony and affidavits from witnesses attesting to the fact that Kaina was boxed in and could not escape, and that the car was hardly moving back and forth when the police fired. (Defendants Exs. 21 at pp. 43-44, 22 at p. 1046, 24 at p. 780, 33).

Results of a toxicology report taken after Kaina's death showed that she had a number of drugs in her body at the time. However, there is no evidence that the police were aware that she had taken any drugs prior to the shooting.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Depot of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial, usually, but not always, the defendant has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and  may not rely on the mere allegations in the pleadings. Porter,

383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced. T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank v. Cities

Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is

merely colorable or not significantly probative does not present a genuine issue of

material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

7

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage.  Id.  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.    Defendants' Liability Pursuant To 42 U.S.C. § 1983

> Section 1983 of Title 42 of the United States Code provides in part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights; rather it is

the vehicle whereby plaintiffs can challenge actions by governmental officials."

Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004) (quoting

Henderson v. City of Simi Valley, 305 F.3d 1056 (9th Cir. 2002)) (quotations

8

omitted).  To state a § 1983 claim, a "plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law."  Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?"  Id. (quoting Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999)) (quotations omitted).

Here, Plaintiffs have alleged that the officers Johnson and De Lara, acting under color of state law, used unreasonable lethal force in their apprehension of Kaina, and in doing so violated her rights pursuant to the Fourth and Fourteenth Amendments of the Unites States Constitution.  Defendants contend that despite Plaintiffs' allegations, they cannot establish a claim pursuant to Section 1983 because (1) The officers are shielded from liability by the doctrine of qualified immunity; and (2) Plaintiffs have failed to provide sufficient evidence to impose liability to the County of Maui under a theory of municipal liability.  The Court addresses these arguments in turn.

A.    Qualified Immunity Of The Officers

The doctrine of qualified immunity shields municipal law enforcement officers from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 455 U.S. 800, 818 (1982). In evaluating whether an officer is entitled to qualified immunity courts consider (1) whether the plaintiff has identified a specific federal statutory or constitutional right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable officer could have believed his or her conduct was lawful. Sweaney v. Ada County, 119 F.3d 1385, 1388 (9th Cir. 1997); Saucier v. Katz, 533 U.S. 194, 201-02 (2001). The determination of whether qualified immunity is available under the circumstances is particularly suitable for summary adjudication because "the entitlement is an *immunity from suit* rather than a mere defense to liability." Martin v. City of Oceanside, 360 F.3d 1078, 1081 (9th Cir. 2004).

There is no question that Plaintiffs in the case at bar have clearly identified that the officers' actions allegedly violated Kaina's Fourth Amendment right to be free from unreasonable searches and seizures. Furthermore, there is no dearth of case law in the courts defining the parameters of reasonable force that a

law enforcement officer may employ based on the scenarios set forth by the respective parties.

However, the final question of whether a reasonable officer could have believed that his or her actions were lawful presents a significant impediment to this Court's assessment or whether qualified immunity is proper in the instant case, and whether such a determination can be made at the summary judgment stage.  The doctrine of qualified immunity incorporates the principle that reasonable mistakes are inevitable as to the legal constraints on particular police conduct, as it is often difficult for an officer to determine how the legal doctrine of excessive force will apply to the myriad of factual situations that he may encounter.  <u>Saucier</u>, 533 U.S. at 205.  Therefore, where an officer correctly perceives all of the relevant facts but has a mistaken understanding as to whether a particular amount of force is legal, such a mistake will not strip the officer of qualified immunity for his actions where that mistake was reasonable.  <u>Id</u>.  Qualified immunity thus serves to protect an officer "from the sometimes hazy border between excessive and acceptable force."  <u>Id.</u> at 206 quoting <u>Priester v. Riviera Beach</u>, 208 F.3d 919, 926-27 (11th Cir. 2000).

Significant factual discrepancies exist which preclude this Court from finding that as a matter of law, De Lara and Johnson acted reasonably under the

11

circumstances.  Should the Court accept Defendants' account of the events, the

doctrine of qualified immunity would undoubtedly shield the officers of any

potential liability for their actions.  However a motion for summary judgment

requires the Court to resolve evidentiary disputes and construe all factual

inferences in the light most favorable to the non-moving party.  <u>Porter</u>, 419 F.3d at

891.

Plaintiffs have submitted the testimony of a number of witnesses that

at the time of the shooting, the Cadillac that Kaina was driving was hemmed in

with no route of escape.[2]  (Plaintiffs' Exs. 21 at pp. 43-44, 25 at p. 784, 33, 36 at p.

783).  Plaintiffs have also provided evidence that the car never reversed and posed

a threat to hit De Lara.  In particular, Plaintiffs have presented testimony from a

number of witnesses who claim that the car was not moving at the time, or that it

was simply rocking back and forth.  (Plaintiffs Ex. 22 at p. 1046, 24 at p. 780, 35 at

pp. 1078-1080).  This is a critical fact as Defendants' basis for asserting that Kaina

posed an ongoing threat was her ability to continue to operate the car in a reckless

manner.  There is no evidence that Kaina had any type of weapon or otherwise

---

[2]Defendants argue that the testimony of lay witnesses regarding whether Kaina was boxed in at the time and unable to escape should not be considered as they are not qualified to opine on the issue.  The Court disagrees.  Whether or not a car could escape given the configuration of the surrounding cars and other barriers is an assessment well within the grasp of a lay witness.

12

posed a threat to the police officers or anybody else if she could no longer operate the vehicle.

Where a suspect poses no threat to law enforcement officials or others, the use of deadly force to apprehend a subject is a clear violation of the suspect's Fourth Amendment rights.  See e.g. Tennessee v. Garner, 471 U.S. 1, 3 (1985) (holding that the use of deadly force is improper "unless it is necessary to prevent the escape and the officer has probably cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others").

While the Court certainly recognizes the utility of deciding whether qualified immunity shields an officer from liability as a matter of law whenever possible, sometimes such a determination cannot be made due to disputes governing the underlying facts.  Santos v. Gates, 287 F.3d 846, 855 n.12 (9th Cir. 2002) (noting that whether the officers may have made a reasonable mistake of fact or law may ultimately depend on the jury's resolution of disputed facts and the inferences it draws therefrom); Rosales v. City of Phoenix, 202 F. Supp. 2d 1055, 1060-61 (D.C. Ariz. 1999) (decision of this court, subsequently affirmed by the Ninth Circuit in Rosales v. City of Phoenix, 25 Fed. Appx. 582 (9th Cir. 2001),

finding that the significant factual discrepancies in the case precluded the Court from ruling on the issue of qualified immunity at the summary judgment stage).

Here, the parties have submitted substantially differing accounts of the events leading up to the shooting of Kaina. Until a jury sifts through the evidentiary record and makes conclusions of fact, the Court cannot conclude whether a reasonable officer could have believed that the use of deadly force was appropriate under the given circumstances. Furthermore, marked differences in the factual accounts preclude this Court from assessing whether any mistakes that the officers may have made as to the legal constraints on their use of deadly force were reasonable.

B.    Municipal Liability Under § 1983

County Defendants argue that Plaintiffs have failed to establish a genuine issue of material fact that the alleged constitutional violations against them were undertaken pursuant to an official county policy, or that they failed to adequately train the officers. The Court agrees.

To establish a claim under § 1983 for municipal liability, a plaintiff must establish that the alleged unconstitutional action implements or executes a municipal policy or custom. Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978). "[T]he word 'policy' generally implies a course of action

14

consciously chosen from among various alternatives." <u>Oklahoma City v. Tuttle</u>,

471 U.S. 808, 823 (1985).  The word custom recognizes situations where the

practices of officials are permanent and well settled.  <u>Adickes v. S. H. Kress & Co.</u>,

398 U.S. 144, 167-68 (1970).  A plaintiff may establish municipal liability by

proving that the alleged constitutional violation was committed pursuant to a

formal policy or custom that constitutes the standard operating procedure; that an

official with "final policy-making authority committed the constitutional tort; or

"that an official with final policy-making authority ratified a subordinate's

unconstitutional decision or action and the basis for it." <u>Gillette v. Delmore</u>, 979

F.2d 1342, 1346-47 (9th Cir. 1992).

      A Plaintiff may not assert a claim under Section 1983 by merely

identifying conduct properly attributable to the municipality.  <u>Bd. Of County

Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997).  "The plaintiff must also

demonstrate that, through its *deliberate* conduct, the municipality was the 'moving

force' behind the injury alleged.  That is, a plaintiff must show that the municipal

action was taken with the requisite degree of culpability and must demonstrate a

direct causal link between the municipal action and the deprivation of federal

rights." <u>Id.</u>

Under limited circumstances, a failure to adequately train police officers may also form a basis of liability for a municipality.  <u>City of Canton</u>, 489 U.S. 378, 387 (1989).  Deficient police training creates Section 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons" the police have contact with.  <u>Id.</u> at 388.  Deliberate indifference may be found where a training program is obviously deficient, and the inadequacy of the program is likely to result in the violation of citizen's constitutional rights.  <u>Id.</u> at 390.

Additionally, liability under Section 1983 exists only "where a deliberate choice to follow a course of action is made from among various alternatives by city policy makers."  <u>Id.</u> at 389 (internal citations omitted).  The policy in question ***must be a conscious choice of action*** on behalf of the city and a "policy" as defined by Supreme Court jurisprudence.  <u>Id.</u>  (emphasis added).  In examining this policy, a plaintiff must point to an "***identified deficiency***" that is "closely related to the ultimate injury."  <u>Id.</u> at 391 (emphasis added). This is needed to satisfy an essential inquiry in determining municipal liability: "whether there is a direct causal link between a municipal policy...and the alleged constitutional deprivation."  <u>Id.</u> at 385.  These high standards of fault and causation

are necessary to protect judicial efficiency and to avoid creating "de facto respondeat superior liability on municipalities." Id. at 391-2.

Defendants have not claimed or provided any evidence that the Maui County Police Department ("MCPD") had a standard policy or custom to engage in the activities as alleged by them. Therefore, Defendants Section 1983 claim against the MCPD is that it failed to adequately train the police officers in the use of deadly force, and that this failure to train resulted in a violation of Kaina's rights.

Plaintiffs initially claim that any training provided by the MCPD was faulty based on the fact that, after the incident occurred, the MCPD stated that Johnson and De Lara acted reasonably and in accordance with their training in shooting Kaina. (Plaintiffs Concise Statement of Facts ("CSF"), ¶ 13). The gravamen of Plaintiffs' argument is that the officers' conduct was unlawful, they acted in accordance with their training, and thus ipso facto, their training was flawed. However, Plaintiffs' reliance on this statement as a basis for asserting a claim for failure to adequately train is misguided.

Plaintiffs' contention presupposes that when the MCPD made the above statement, it adopted the factual scenario as asserted by Plaintiffs. As noted supra, the parties have markedly differing accounts of what transpired prior to the

17

shooting.  The MCPD is a defendant to the lawsuit, and therefore the Court

presumes that it adopts the factual account as set forth by the collective

Defendants.  If in fact, as Defendants assert, Kaina was attempting to escape or hit

De Lara with the car, could have done so, or otherwise continued to pose a serious

threat of death or great bodily injury to others, then the officers' decision to shoot

Kaina in accordance with their training does not evidence a failure to adequately

train on the part of the MCPD, and therefore the MCPD's statement does not

establish a basis for imposing liability on the county Defendants.

      Plaintiffs next rely on the fact that both Johnson and De Lara cannot

recall whether they received additional training in the use of deadly force after

recruit school, and therefore the MCPD failed to adequately train them.[3]  Plaintiffs

have not provided any evidence of the training methods employed by the MCPD

with regard to the use of lethal force.  Plaintiffs have also failed to provide any

evidence that the MCPD has a policy ***not*** to train officers in the use of lethal force

after recruit school.  Testimony that Johnson and De Lara do not recall if they

---

[3]Plaintiffs, in their Concise Statement of Facts, assert that Johnson and De Lara received
no training in the use of lethal force subsequent to recruit school.  However, this conclusory
statement is not borne out by the evidentiary record.  Rather, both De Lara and Johnson testified
that they could not recall whether they received further training.  (Pl.'s Ex. 3 in Opposition
Deposition of Nelson Johnson at pp. 15, 34-36, 42, 73; Ex. 16 at pp. 29, 55, 74).

received training subsequent to recruit school alone is insufficient to show that the MCPD had a policy **not** to train officers in the use of lethal force.

Plaintiffs have also failed to set forth any evidence to show that the MCPD was in fact required to provide further training.  In addressing the adequacy of police training in deadly force, the Supreme Court in <u>City of Canton</u> stated the following:

> City policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see <u>Tennessee v. Garner</u>, 475 U.S. 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.
>
> It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need.

<u>City of Canton</u>, 489 U.S. 378, 390 n.10 (1989).

In the instant case, there is no question that the County of Maui had an obligation to ensure that police officers are trained with regard to constitutional limitations on the use of deadly force.  However, the evidence in the record indicates that both De Lara and Johnson were provided such training in recruit

19

school.  Plaintiffs do not allege that this training was inadequate.  Instead, they

claim that the MCPD had an ongoing obligation to further train the officers in the

use of lethal force, which they failed to do.

Even if the MCPD did not institute further training beyond that

provided in recruit school, Plaintiffs have not provided any evidence that this

failure constitutes a deliberate indifference to the rights of the public.  In <u>City of

Canton</u>, the Court noted that where multiple violations make it plainly obvious that

further training is necessary, failure to initiate such training could embody

"deliberate indifference."  <u>Id.</u>  Plaintiffs have not set forth any evidence that Maui

officers had previously used lethal force inappropriately, or that any prior events

put the MCPD on notice that further training was necessary.[4]  Indeed, Plaintiffs'

attorney, during the hearing, affirmatively stated that Maui County police officers

had not used lethal force to apprehend a suspect in over fifty years.

Instead of pointing to any systematic problem or prior event by

MCPD officers that might indicate a deficiency in training with regard to the use of

lethal force, Plaintiffs seek to rely on specific prior instances of conduct by

---

[4]Plaintiffs have submitted a statement that police officers, including Johnson, beat a
suspect after the suspect had surrendered.  The suspect was told to contact the internal affairs
office of the MCPD to file a report, but the suspect never filed such report.  Therefore no official
complaint was filed and Johnson was never found guilty to have committed any wrongdoing.

Johnson that they contend should have put the MCPD on notice that Johnson had anger management problems or a disposition toward violence, and therefore needed further training to prevent him from using lethal force in the future. Plaintiffs' reliance on these events, many of which are unsubstantiated, to seek to impose liability on the MCPD is unavailing.

As discussed further below, Plaintiffs have not provided any evidence that Johnson's training in the use of lethal force was inadequate. Plaintiffs simply rely on their assertion that De Lara and Johnson used unlawful force in the present case, and therefore by implication, their training was insufficient. This alone is insufficient to show that the MCPD exhibited a "deliberate indifference" to the rights of the public. None of these incidents, aside from one unsubstantiated event involved the use of excessive force pursuant to an arrest. Furthermore, while these events may reflect poorly on Johnson's suitability as a police officer, they do not establish that the MCPD could have reasonably foreseen that Johnson might inappropriately use lethal force or that further training in this area would have prevented the death of Kaina.

Finally, Plaintiffs suggest that liability may be assessed against the MCPD under a failure to train theory because it allegedly taught police officers that a subjective rather than an objective standard applies to an officer's assessment

21

of whether lethal force is justified.  However, Plaintiffs' allegation distorts
Johnson's deposition testimony.  Johnson stated that his decision to use force is
based on his subjective take of the situation as it's unfolding.  He never stated that
the MCPD told him that a subjective standard applies to a legal determination of
whether force is justified.  Any situation where an officer must make a decision of
whether to use lethal force necessarily relies on that officer's subjective perception
and interpretation of the surrounding events.  Therefore, Johnson's statement does
not in and of itself establish that the MCPD improperly trained its officers.

## II.    Plaintiffs' Claims For Wrongful Death

        Section 663-3 of the Hawaii Revised Statutes states that "[w]hen the
death of a person is caused by the wrongful act, neglect, or default of any person,
the deceased's legal representative, or any of the persons enumerated in subsection
(b), may maintain an action against the person causing the death or against the
person responsible for the death."

        As discussed more thoroughly supra, substantial questions of fact
remain unresolved as to the events precipitating the shooting of Kaina.  If in fact
Kaina was unable to escape and posed no serious threat to the public or the
officers, a reasonable jury could find that Kaina's death was caused by a wrongful
act of the officers.  Therefore, this Court finds that genuine issues of material fact

exist sufficient to preclude a finding that, as a matter of law, Defendants cannot be found liable for the death of Kaina as set forth in Section 663-3.

III.    Plaintiffs' Claims for Assault and Battery

In order to establish a claim for tortious battery, a plaintiff must show an unlawful physical invasion of his/her person accomplished without his/her consent. Ozaki v. Ass'n of Apartment Owners, 954 P.2d 652, 668 (Haw. Ct. App. 1998). There is no question that the shooting of Kaina constitutes a physical invasion of her person, and that she did not consent. However, for the same reasons stated above, genuine issues of material fact exist as to whether the officers' actions were lawful. Therefore, the adjudication of this issue is not appropriate on summary judgment.

IV.    Plaintiffs' Claims For Negligent And Intentional Infliction Of Emotional Distress

In order to succeed on a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another. Hac v. University of Hawaii, 73 P.3d 46, 60 (Haw. 2003). The related claim for negligent infliction of emotional distress ("NIED") requires a showing that (1) the defendant engaged in negligent

23

conduct; (2) the plaintiff suffered serious emotional distress; and (3) such negligent conduct of the defendants was the legal cause of the serious emotional distress. Calleon v. Miyagi, 876 P.2d 1278, 1288 (Haw. 1994).

As noted above, significant factual discrepancies exist between the parties' versions of the events precipitating the shooting. If in fact, a jury accepts Plaintiffs' account of the events, the Court finds that such a determination could form the basis for a claim for both negligent and intentional infliction of emotional distress.

Defendants have provided evidence that Kaina was estranged from her family members, and therefore her death would not have caused the level of emotional distress necessary to state a claim for IIED or NIED. While this may have been the case during certain time periods, the Court finds that issues of material fact exist as to the relationship of the family members to Kaina at the time of her death, and therefore whether they suffered extreme emotional distress.

V.    Plaintiffs' Claims For Negligent Supervision

Plaintiffs have also claimed that the County of Maui failed to adequately supervise officers De Lara and Johnson and are therefore liable for

Kaina's death under a theory of negligent supervision.[5]  Where an employer

"knew, or reasonably should have anticipated, that one of its employees would

commit an intentional tort against a person to whom the [County] owed a duty of

care, the [County] is liable for the negligence of those employees who were in a

position to take reasonable precautions against the anticipated harm."  In order to

succeed on a theory of negligent supervision, the plaintiff must show that the

employer knew or should have known of the necessity and opportunity for

exercising such control over an employee.  Essentially, the test for negligent

supervision is one of foreseeability.  Abraham v. S.E. Onorato Garages, 446 P.2d

821, 826 (Haw. 1968).

As a basis for its claim for negligent supervision, Plaintiffs have set

forth a number incidents and factors that they allege should have put the MCPD on

notice that Johnson had anger management issues and might use excessive force in

the future.  Initially, Plaintiffs assert that Johnson had problems with anger

management and working with others.  Plaintiffs point to several performance

evaluations where they between 1999 and 2002, Johnson received a score of 2 out

of 5 in "Coping With Stress" and "Working Relationships With People."

---

[5]In their Opposition to Defendants Motion for Summary Judgment, Plaintiffs have
conceded summary judgment as to their claim for negligent hiring.

Plaintiffs also cite several incidents involving others that they claim illustrate that Johnson had problems with anger, and put the MCPD on notice of this problem. In particular, Plaintiffs state that Johnson (1) challenged a high school student to a fight while he was a school resource officer; (2) physically and verbally assaulted another police officer while they were both off-duty at a community basketball game; (3) became itinerant after he was involved traffic accidents; (4) kicked a suspect in the head after the suspect had surrendered during an arrest; (5) made inappropriate remarks to a police dispatcher; and (6) allegedly choked and kicked his wife on one occasion.

Plaintiffs have failed to provide sufficient evidence to create an issue of fact for a jury as to whether it was foreseeable that Johnson might at some point use excessive force. During the same period where Plaintiffs cite evaluations in which Johnson received a rating of 2 on Coping With Stress, he also received other evaluations where he received a score of 3 or 4. (Def.'s Exs. EE, FF, GG in Support of Their Mot. for Summ. J.). One of the two evaluations where Johnson received a 2, the evaluator noted that "Johnson gets affected by stressful situations, especially personal incidents." However, nothing in the evaluations stated that Johnson's problems with stress caused him to react in a violent manner.

While certainly disturbing, none of the incidents set forth by Plaintiffs, aside from the allegation that he kicked a suspect in the head after the suspect had surrendered, would reasonably have put the MCPD on notice that Johnson might have a proclivity to use excessive force in effectuating an arrest. Although Plaintiffs provided evidence that an MCPD kicked a suspect in the head after the suspect had surrendered, Plaintiffs have not shown that it was actually Johnson who kicked the suspect.  Plaintiffs have provided evidence that the suspect's girlfriend stated to the police that the suspect told her that the first officer through the door kicked him.  However, a separate report indicates that Johnson was not the first officer through the door.  (Id. AA at p. 262).  Furthermore, Plaintiffs claim that an officer kicked the suspect or that the other officers beat him was never substantiated.  As noted, <u>supra</u>, the suspect never filed a complaint with the internal affairs department even after being told to do so, and Johnson was never found guilty of any wrongdoing.

Plaintiffs reliance on <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966 (3rd Cir. 1996) is misplaced.  In <u>Beck</u>, the court found that the police department had received multiple complaints about the officer using excessive force in the past, yet did nothing about it.  <u>Id.</u> at 969.  Nothing identified by Plaintiffs indicate that Johnson had used excessive force to effectuate arrests in the past.  While Plaintiffs

27

have identified two incidents regarding violent behavior, one occurred when he was off-duty, and the other involved only the threat of violence.  The other claims are unsubstantiated or were later recanted.  While certainly the record does not indicate that Johnson was not a model police officer, there is no evidence that Johnson had on any occasion used excessive force in apprehending a suspect on any prior occasion.  Therefore, the Court finds nothing in the record sufficient to support the conclusion that it was reasonably foreseeable that Johnson might use inappropriate lethal force in effectuating an arrest.

## VI.     Plaintiffs' Claims For Punitive Damages

Plaintiffs' Complaint includes a claim for punitive damages against the County defendants.  However, municipalities are immune from liability for punitive damages.  Newport v. Facts Concert, Inc., 453 U.S. 247, 271 (1981).

Although Plaintiffs cannot recover punitive damages from the municipality, their claim remains against Johnson and De Lara.  See Smith v. Wade, 461 U.S. 30, 56 (1982) (stating that a jury may assess punitive damages under Section 1983 when defendants' conduct involves "reckless or callous indifference to the federally protected rights of others").

CONCLUSION

For the reasons stated above, the Court hereby GRANTS Defendants' Motion for Summary Judgment with respect to the claims against the County of Maui and the Maui County Police Department for violations of Section 1983 of Title 42 of the United States Code, negligent supervision and training, and punitive damages, and DENIES Defendants' Motion as to the remaining claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 26, 2006.



_____
David Alan Ezra
United States District Judge

Megan Kaina, et al. v. County of Maui, et al., Civil No. 04-00608 DAE/LEK; ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT