IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MEGAN KAINA, KAMAILE KAINA, KAWIKA KAINA through their Next Friend, MALIA KAINA; ISAAC KAINA; AVON KEALOHA; MITSUO TOMITA; ANDY TOMITA; JESSE TOMITA; AMOS TOMITA AND AVON KEALOHA AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LISA TOMITA KAINA, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF MAUI; COUNTY OF MAUI POLICE DEPARTMENT; NELSON JOHNSON; ALLEN DE LARA; AND DOE DEFENDANTS 3-300; <br><br> Defendants. | CIVIL NO. CV 04 00608 DAE <br> [Non-Motor Vehicle Tort] <br><br> PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION |

MEMORANDUM IN
SUPPORT OF MOTION

I.    INTRODUCTION

Plaintiffs respectfully request reconsideration of this Honorable Court's

grant of summary judgment in favor of Defendant County of Maui ("County")

regarding Plaintiffs' claims of negligent supervision and Plaintiffs' claims of

municipal liability under 42 U.S.C. § 1983. Plaintiffs respectfully submit that as

to each claim they have raised a genuine issue of material fact that is appropriately

determined by the jury.

II.    NEGLIGENT SUPERVISION

Respectfully, Plaintiffs submit the Court applied the wrong legal standard

in evaluating their negligent supervision claim against the County. Plaintiffs

request the Court to reconsider their claim for negligent supervision solely in the

context of **state law** tort liability for the County's failure to adequately supervise

Officer Johnson, which is a discrete issue from their federal civil rights' claims of

excessive force violating the Fourth Amendment. The Court states Plaintiffs' rely

on *Beck v. City of Pittsburgh*, 89 F.3d 966 (3rd Cir. 1996) to support their claim of

negligent supervision. Order at 27. This is incorrect. Plaintiffs' citation to *Beck* is

found in their Memo at 30-31. Plaintiffs' rely upon *Beck* in support of their federal

civil rights claim. The Court then concluded, "Nothing identified by Plaintiffs

indicate that Johnson had used excessive force to effectuate arrests in the past."

Order at 27.

Notice of "excessive force to effectuate arrests" may be required for a

federal civil rights claim with its concurrent high standard of proof of "deliberate

indifference." Plaintiffs, however, must emphasize their claim of negligent supervision is a **state law** tort claim, with a much lower burden of proof, and addresses a wholly separate issue than their civil rights claim. The question in Plaintiffs' negligent supervision claim is not whether Johnson used "excessive force" in previous arrests, and did so in arresting Kaina. The question, rather, is whether the County had sufficient notice Johnson had a propensity to commit the state law torts of assault and battery, and failed in their duty to supervise and control[1] him from committing a further assault and battery against Lisa Kaina.

First and foremost, as the Court has correctly ruled, in Plaintiffs' version of the facts, Johnson shooting Kaina in the head constituted the tort of assault and battery. The County knew of numerous incidents of assault and battery by Johnson, yet never required him to attend anger management, see the police psychologist, or take any other affirmative steps to supervise Johnson. Instead, the

---

[1]This duty to control is undisputed:

> The relationship of employer and employee may, under certain circumstances, create a duty on the employer to control the conduct of the employee when the acts complained of are so connected with the employment in time and place as to give the employer a special opportunity to control the employee. Harper and Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 896 (1934). It is essential for liability that there be a showing by the plaintiff that the employer knew or should have known of the necessity and opportunity for exercising such control.
>
> Footnote continued

*Abraham v. S. E. Onorato Garages*, 50 Haw. 628, 634, 446 P.2d 821, 826 (1968).

County ignored the emerging pattern of Johnson's violent behavior. Drawing all inferences in favor of Plaintiffs, a reasonable jury may conclude the County was on notice of a problem with their employee, and breached their duty to supervise and control that employee.

Plaintiffs' burden of proof as to their negligent supervision claim must be viewed in the context of ordinary negligence; they are not required to meet the much higher standard of "deliberate indifference." Hawaii law holds that negligence actions are matters for the jury to decide:

> Whether there was a breach of duty or not, i.e., whether there was a failure on the defendant's part to exercise reasonable care, is a question for the trier of fact. "For 'under the prevailing rule[,] duty . . . is bounded by the foreseeable range of danger,' and 'reasonable foreseeability of harm **is the very prototype of the question a [trier of fact] must pass upon in particularizing the standard of conduct in the case before it.'"**

*Doe Parents No. 1 v. Dep't of Educ.*, 100 Haw. 34, 57-58, 58 P.3d 545, 569-570 (2002) (citations omitted) (emphasis added).

> Where the facts are disputed and reasonable men might differ on the facts or the inferences which may be reasonably drawn from the facts, the question of negligence is left to the jury under proper instructions.

*Carreira v. Territory,* 40 Haw. 513, 517 (1954).

4

> **Whether the obligation to exercise reasonable care was breached is ordinarily a question for the trier of fact to determine.** For "[u]nder the prevailing rule duty to use due care is bounded by the foreseeable range of danger," and "[r]easonable foreseeability of harm is the very prototype of the question a jury must pass upon in particularizing the standard of conduct in the case before it." 2 F. Harper & F. James, The Law of Torts § 18.8, at 1059 (1956); see also *Farrior v. Payton*, 57 Haw. at 631, 562 P.2d at 787 (quoting with approval *Machacado v. City of New York*, 365 N.Y.S.2d 974, 979-980 (1975)). **Whether the breach of duty was more likely than not a substantial factor in causing the harm complained of is normally a question for the trier of fact also.** *McKenna v. Volkswagenwerk Aktiengesellschaft*, 57 Haw. 460, 464, 558 P.2d 1018, 1022 (1977). We recognize too that "[i]ssues of negligence are ordinarily not sU.S.C.eptible of summary adjudication" by the court. *Pickering v. State*, 57 Haw. 405, 407, 557 P.2d 125, 127 (1976) (citing 6 J. Moore, *Moore's Federal Practice* para. 56.17[42] (2d ed. 1948).

*Bidar v. AMFAC, Inc.*, 66 Haw. 547, 552-53, 669 P.2d 154, 160 (1983) (emphasis added).

The record contains numerous examples of Johnson committing assault and battery both on and off duty that the County indisputably knew about, yet did nothing to prevent a reoccurrence. As listed in Plaintiffs' Memo in Opposition[2]:

---

[2]All references to Exhibits herein refer to Exhibits attached to Plaintiffs' Concise Statement of Facts.

5

> On March 16, 2000, as a School Resource Officer at
> Maui High School, Johnson removed his police gun
> belt, unzipped his police uniform shirt, and
> challenged a high school student to a fight, violating
> six subsections of MPD's General Order 103.1. *See*
> Exhibit 1 at 1623-1626. The penalty: Johnson was
> taken out of the school and put back on armed patrol.
> *Id.*; Exhibit 3, 168-170.

Plaintiffs' Memo at 2.

An on-duty police officer challenging a boy to a fight certainly constitutes

an assault, which the County knew of yet did nothing to discipline other than

remove Johnson from that particular school.

Another incident involving Johnson punching an officer in the head:

> On October 17, 2003, only three months before the
> shooting death of Lisa Kaina, it was determined that
> Johnson verbally and physically assaulted another
> officer on November 26, 2002 at a community
> basketball game. *See* Exhibit 2 at 2279.
>
>                              * * *
>
> The penalty:  Johnson was suspended for one day.
> But, his discipline could be reduced to a written
> reprimand if he completed an approved anger
> management course. Exhibit 2 at 2279. Johnson **did
> not** attend an approved anger management course.
> Exhibit 3 at 165.

Plaintiffs' Memo at 3-4 (emphasis in the original).

Punching another officer in the head is an assault and battery, again which

6

the County knew of. The County did not follow through with requiring Johnson to attend anger management, part of the disciplinary action against him. The incident of the assault at the school and the assault and battery at the basketball game are definitively substantiated by the County's own records.

As to the next two incidents, the complaint by Jesse Hueu and Johnson's wife, Plaintiffs realize that the first did not progress beyond the initial complaint, and the latter was recanted. However, Plaintiffs are offering them not for the truth of the matter alleged, but rather for notice to the County that they should have suspected Johnson needed additional supervision to ensure he was not going to commit another assault and battery. It is important to note that the tort of negligent supervision does not attach vicarious liability to the County for Johnson's actions; rather, liability attaches directly for the County's own inaction in failing to adequately supervise Johnson when they had a duty to do so. See *Doe Parents No. 1* at 66-67, 58 P.3d at 577-78, discussed *infra*.

As to the Hueu incident:

> On March 1, 2002, Jesse Hueu was arrested by a number of officers, including Johnson. He had surrendered in a men's room after the police officers gave chase. The first officer into the bathroom kicked Hueu in the head. That officer was Johnson. See Exhibit 8 at 2578-2579; 2623-2624. Because Heue did not contact Internal Affairs to file a complaint, the case was closed. *Id.* at 2578.

Plaintiffs' Memo at 5.

The Court states in discussing the Hueu incident that there was a separate report indicating Johnson may not have been the first officer through the door. Order at 27. Johnson's own report, however, indicates he was that first officer:

> I again identified myself as a police officer and kicked the bathroom door with my right foot. I kicked the door again and it opened approximately 8 to 10 inches, the abruptly closed. Before HUEU shut the door, I saw HUEU sitting on the ground with his back against the door, it closed I kicked the door once more displacing HUEU, and completely opening the door.

Exhibit 8 at 2623.

Moreover, in any event, even if Johnson was not the first officer who kicked Hueu in the head, the complaint alleges **all** the officers beat Hueu with their fists:

> Jesse was kicked in the head by the first police officer who came into the restroom and the rest then began to beat him with their fists.

Exhibit 8 at 2578.

As to the incident with Johnson's wife:

> Johnson's wife reported to MPD that on June 26, 2000 at 5:30 a.m., Johnson grabbed her around the neck, choked her for 30 seconds and kicked her  See Exhibit 6 at 2460.  This incident was not pursued by MPD purportedly because Mrs. Johnson withdrew her

> complaint. *Id.* at 2435-36.  According to Chief
> Phillips, a police officer convicted of domestic
> violence will lose his weapon and his job.  Exhibit 4
> at 62-63.  Phillips admitted that spouses frequently
> withdraw domestic violence complaints even though
> the violence in fact occurred.  *Id.*

Plaintiffs' Memo at 5.

Choking a woman is an assault and battery.

Therefore, by the time of Kaina's death, the County had concerning

Johnson two substantiated incidents of assault and/or battery, one initial complaint

of assault and battery, and another complaint of assault and battery that Chief

Phillips testified was made in the context where the complainant often recants

even though the violence in fact occurred.  The County also had on record the

bizarre incident involving Johnson's attempted extortion of Christopher Chang,

which should have reinforced to the County that Johnson had a volatile

personality.  Plaintiffs' Memo at 4.  The County also had notice of Johnson's

remarks to the dispatcher, the critical comments on Johnson's evaluations, and

Johnson's numerous motor vehicle accidents.  *Id.* at 5-7.  Yet Johnson was never

sent to Dr. Farcas, the County's psychologist.  Exhibit 4 at 57-59; 61-62; 65; 71-

72; 83; 95-97.  Chief Phillips did not see an emerging pattern of incidents

requiring additional supervision of Johnson.  *Id.* at 98.

9

A reasonable jury may conclude that Chief Phillips was simply wrong, that there were enough red flags concerning Johnson that the County should have done something to at least investigate the need for his additional supervision. This is especially true considering:

> Generally, the defendant's conduct is measured against **"what a reasonable and prudent person would . . . have done under [the] circumstances"** in determining whether there has been a breach of a duty of care owed to the plaintiff.

*Doe Parents No. 1* at 82, 58 P.3d at 592.

A reasonable jury may conclude the County did not act in a "reasonable and prudent manner" in supervising Johnson.

Furthermore, if Johnson had only menacingly approached Kaina and punched her in the head, Plaintiffs respectfully submit there would be little doubt their negligent supervision claim would stand, given the fact the County had notice of prior assault and battery by Johnson. The fact that Johnson used a gun instead of his fist does not change the fact that Plaintiffs' negligent supervision claim is essentially grounded in state law tort liability for the failure of a supervisor to control an employee they knew had a propensity for committing assault and battery. Again, the issue in Plaintiffs' negligent supervision claim is not whether Johnson used unconstitutional force against Kaina, the issue is

10

whether the County should have but did not take steps to supervise and control him from committing another state law tort.

Plaintiffs' view of what constitutes negligent supervision has been specifically endorsed by the Hawaii Supreme Court and the Ninth Circuit, in the much more restrictive context of claims under the *State Law Torts Act*:

> However, we also agree, where "the government entity should have reasonably anticipated that one of [its] employees would commit an intentional tort," *Durtschi*, 716 P.2d at 1245, that the STLA's intentional tort exception does not insulate the governmental entity from liability. As the *Durtschi* court opined:
>
>> The fact that the foreseeable danger was from intentional or criminal misconduct is irrelevant; the school district had a . . . duty to make reasonable efforts to protect its students from such a danger. A breach of that duty constitutes negligence. . . . [Thus, the teacher's] actions [do not necessarily] constitute a supervening cause, and the school district's tortious conduct [does] not arise out of the assault and battery. **Rather, the roots of the assault and battery [lie] in the district's own negligence.**
>
> 716 P.2d at 1244. **In the context of a negligent supervision claim**, the Idaho Supreme Court has subsequently held that the ITCA's intentional tort exception would not, therefore, constitute a bar so long as **"those who had the duty to supervise should have reasonably anticipated that those**

11

**subject to their supervision would commit a battery."** *Kessler*, 931 P.2d at 648.

Finally, we note that the Massachusetts Supreme Judicial Court has similarly rejected a "broad" construction of the intentional tort exception contained in the Massachusetts Tort Claims Act. See, e.g., *Dobos v. Driscoll*, 404 Mass. 634, 537 N.E.2d 558, 569 (Mass. 1989) (holding that **"where the supervisory officials allegedly had, or should have had, knowledge of a public employee's assaultive behavior, it is the supervisor's conduct, rather than the employee's intentional conduct, that is the true focus"** of the plaintiff's negligence claim).

We have repeatedly held that the STLA "should be liberally construed to effectuate its purpose to compensate the victims of negligent conduct of state officials and employees in the same manner and to the same extent as a private person in like circumstances." *Breed v. Shaner*, 57 Haw. 656, 665, 562 P.2d 436, 442 (1977) (citing *Rogers v. State*, 51 Haw. 293, 296-98, 459 P.2d 378, 381-82 (1969) (refusing to "emasculate" the STLA by broadly construing the "discretionary function" exception to include "operational level acts" of state employees)); cf. *Hawaii Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 229, 11 P.3d 1, 17 (2000) ("'Remedial statutes are liberally construed to suppress the perceived evil and advance the enacted remedy.'" (Quoting *Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 68, 905 P.2d 29, 43 (1995) (brackets omitted).)). That being the case, we believe that **the Ninth Circuit** and the Idaho and Massachusetts high courts have articulated the better view of the intentional tort exception, as opposed the "broad" view espoused by the majority of the federal appellate courts. Adoption of the latter, grudging

> construction would irrationally restrict the remedial purpose of the STLA to compensate victims of the negligent conduct of state employees.
>
> * * *
>
> However, where the plaintiff's negligence claim seeks to hold the State liable for the conduct of state employees other than the alleged intentional tortfeasor, pursuant to theories of negligent hiring, retention, supervision, or the like, the plaintiff's claim does not necessarily "arise out of" the hired, retained, or supervised employee's intentional tort. **Rather, if the State knew, or reasonably should have anticipated, that one of its employees would commit an intentional tort against a person to whom the State owed a duty of care, the State is liable for the negligence of those employees who were in a position to take reasonable precautions against the anticipated harm.**

*Doe Parents No. 1* at 66-67, 58 P.3d at 577-78.

The County owed a duty of care to Lisa Kaina to prevent her from being the subject of an assault and battery by Johnson, who was under the County's supervision. The County had ample notice Johnson was inclined to commit assault and battery. The County "who had the duty to supervise should have reasonably anticipated that those subject to their supervision would commit a battery." *Id.* Yet the County did nothing, and is now "liable for the negligence of those employees who were in a position to take reasonable precautions against the anticipated harm." *Id.*

13

Therefore, Plaintiffs respectfully ask the Court to vacate the Order

granting the County's Motion for Summary Judgment as to the tort of negligent

supervision, and to deny the same.

III.     THE COUNTY'S LIABILITY UNDER 42 U.S.C. § 1983

The Court states:

> In the instant case, there is no question that the
> County of Maui had an obligation to ensure that
> police officers are trained with regard to
> constitutional limitations on the use of deadly force.
> However, the evidence in the record indicates that
> both Johnson and De Lara were provided such
> training in recruit school.  Plaintiffs do not allege that
> this training was inadequate.

Order at 19-20.

Respectfully, Plaintiffs did put in issue the adequacy of **all** of both

officers' training, including the recruit school training.  Plaintiffs specifically put

on record that in regards to De Lara:

> DeLara could recall no training from MPD on
> alternatives to getting a driver out of a stolen car short
> of shooting the driver. [Exhibit 16] at 46.  DeLara
> could not recall any training received in shooting at a
> driver of a moving vehicle.  *Id.* at 55.  He could recall
> no regularly scheduled training after recruit school
> regarding the use of deadly force.  *Id.*  **DeLara was**
> **unfamiliar with the basic order that police use**
> **only force that is reasonably necessary.**  *Id.* at 74.

Plaintiffs' Memo at 8-9 (emphasis added).

14

De Lara received training in recruit school, but testified that even after such training, he didn't recall the basic order governing the use of force:

> Q.   Are you familiar with this? "Officers shall use only that force which reasonably appears necessary to accomplish valid police objectives." Are you familiar with that?
>
> A.   I don't recall.
>
> Q.   Does that sound consistent with training that you've received at MPD?
>
> A.   I don't recall.
>
> Q.   With the white Cadillac, the valid police objective was to immobilize the Cadillac, yes? I mean, that was one valid police objective, correct? Right? You guys wanted to immobilize the car.
>
> A.   We wanted to stop the car.

Exhibit 16 at 74.

De Lara's unfamiliarity with the fact that only "reasonable force" is permitted becomes incredibly important in understanding and evaluating that his decision to fire was based on someone else's decision, not his own. De Lara testified he fired only because Johnson did:

> Q.   And you were on the side of the Cadillac outside the driver's window when you saw those things, correct?

15

A.    Yes.

Q.    And then you heard a shot, yes?

A.    Yes.

Q.    Before you heard the shot, you did not plan to shoot, is that true?

A.    Yes.

Q.    When you heard the shot, it was like an automatic reaction for you to shoot?

Ms. Martin:        Objection; argumentative.

A.    No.

Q.    You didn't plan to shoot?

A.    Yes.

Q.    You heard a shot, yes?

A.    Yes.

Q.    Then you shot?

A.    Yes.

Q.    What caused you to shoot?

A.    The driver did not show any signs of surrendering or stopping the car.

Q.    At what point in time?  You mean in between the first shot and your shot?

16

A.    Yes.

Q.    But sir, that was a second or less, right?

A.    Yes.

Q.    And you didn't plan to shoot between the first shot and the second shot, you didn't arrive at a plan to shoot, did you, in that brief moment of time?

A.    No.

Exhibit 16 at 101-103.

It is undisputed De Lara was standing next to the vehicle when he fired, himself in no immediate danger. Exhibit 16 at 100. A reasonable inference may be drawn from the above testimony that De Lara fired only because Johnson did. Johnson, of course, has testified he shot to save De Lara.

De Lara cannot give that justification. He fired only because of Johnson's decision. De Lara's justification is he wanted to stop the car. De Lara testified even after recruit school he was unfamiliar with the basic order requiring that use of force not exceed what is reasonably necessary.

A reasonable jury may infer that since De Lara was simply never trained in the limits of deadly force, he overreacted in this situation, and used far more force than necessary to accomplish his objective of stopping the car. **De Lara didn't even give a warning before firing.** Defendant's own expert Robert Fonzi

testified "that insufficient training of officers can lead directly to the unnecessary death of suspects and can cause an officer to overreact or panic." Plaintiffs' Memo at 13-14.

Fonzi testified:

> Q. And insufficient training can directly lead to unnecessary injury or death to officers, yes?
>
> A. Yes.
>
> A. Suspects, yes?
>
> Q. And members of the general public, right?
>
> A. Yes.
>
> **Q. Insufficient training can cause an officer to overreact or panic in certain circumstances; is that correct?**
>
> **A. Yes, it is.**

Exhibit 23 at 56 (emphasis added).

De Lara's own testimony raises a question of fact as to whether he received adequate training in the constitutional limits of the use of force. Defendant's own expert's testimony raises a question of fact as to whether this inadequacy caused De Lara to overreact and shoot Kaina in the head when such extreme force was far from necessary. In *Brown v. Gray*, 227 F.3d 1278, 1287

(10th Cir. 2000), the Court held that expert testimony and the **officer's own testimony** of his inadequate training were sufficient to support the verdict of municipal liability under 42 U.S.C. § 1983.  Cited in Plaintiffs' Memo at 30.

It would be unfair not to allow Plaintiffs' suit against the County for inadequate training, especially if De Lara is allowed to testify to it at trial.  And he should be, since ultimately it is a question of fact.  A reasonable jury may well infer De Lara fired only because he was so poorly trained, and may let De Lara escape liability under 42 U.S.C. § 1983 but without the County present to accept it.

Also, **it would be unfair to De Lara** to release the County at this point.  If the Court is willing to let the County completely escape 42 U.S.C. § 1983 liability, then Plaintiffs will have to move to limit all testimony regarding De Lara's inadequate training, as the Court has found such irrelevant.  Yet De Lara may truly desire to testify as to his inadequate training **as his defense** to 42 U.S.C. § 1983 liability, and be unable to.

Regarding Officer Johnson, Plaintiffs specifically put on record:

> Strikingly, the training he did receive violates the law.  Johnson was specifically trained that a **subjective** rather than **objective** standard applies to the officer's assessment in whether or not lethal force is justified.  Exhibit 3 at 42:16-25; 73:8-25.

Plaintiffs' Memo at 8 (emphasis in the original).

Johnson testified at deposition:

> Q.   Have you received any training  in what
>      the phrase "the officer reasonably
>      believes" means?
>
> A.   Yes.
>
> Q.   What training did you receive regarding
>      that?
>
> A.   Recruit training.
>
> Q.   Anything after recruit training?
>
> A.   Not that I can recall at this time.
>
> Q.   Okay.  And what is your understanding
>      of what that phrase means, based on your
>      training?
>
> A.   I'm sorry, could you repeat that again?
>
> Q.   What is your understanding of what the
>      phrase "the officer reasonably believes"
>      means, based on your training?
>
> A.   My judgment call that I need to act to
>      save life.
>
> Q.   And that's how you were trained?
>
> A.   Yes.
>
> Q.   And that would be your subjective
>      judgment call as you were trained?

A.    Yes.

Exhibit 3 at 73.

Plaintiffs assert that on summary judgment, all reasonable inferences must be drawn in their favor, and that a reasonable inference may be drawn that Johnson was specifically trained that it was his judgment solely that justified his actions. This would be inadequate training in the constitutional limits of the use of force. In *Davis v. Mason County*, 927 F.2d 1473 (9th Cir. 1991), cert. denied, *Mason County v. Davis*, 502 U.S. 899, 112 S. Ct. 275 (1991), such inadequacy was found sufficient to affirm municipal liability under 42 U.S.C. § 1983.

As in the case at bar, in Davis:

> The issue is not whether the officers had received any training - most of the deputies involved had some training, even if it was minimal at best - rather the issue is the adequacy of that training. *City of Canton*, 489 U.S. at 390. More importantly, while they may have had some training in the use of force, **they received no training in the constitutional limits of the use of force.**

*Davis* at 1482-83 (emphasis added)(cited in Plaintiffs' Memo at 29).

Therefore, Plaintiffs respectfully ask the Court to vacate the Order granting the County's Motion for Summary Judgment as to 42 U.S.C. § 1983 liability, and to deny the same.

IV.    CONCLUSION

Based on the arguments and authorities above, Plaintiffs respectfully ask the Court to vacate the Order granting the County's Motion for Summary Judgment as to the tort claim of negligent supervision and as to 42 U.S.C. § 1983 liability, and to deny the same.

DATED: Honolulu, Hawaii, February 6, 2006.

_____
DAVID J. GIERLACH
BRIAN A. DUUS
Attorneys for Plaintiffs