IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MEGAN KAINA, KAMAILE KAINA, KAWIKA KAINA through their Next Friend, MALIA KAINA; ISAAC KAINA; AVON KEALOHA; MITSUO TOMITA; ANDY TOMITA; JESSE TOMITA; AMOS TOMITA AND AVON KEALOHA AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LISA TOMITA KAINA, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF MAUI; COUNTY OF MAUI POLICE DEPARTMENT; NELSON JOHNSON; ALLEN DE LARA; AND DOE DEFENDANTS 3-300; <br><br> Defendants. | CIVIL NO. CV 04 00608 DAE <br> [Non-Motor Vehicle Tort] <br><br> MEMORANDUM IN SUPPORT OF MOTION |

MEMORANDUM IN
SUPPORT OF MOTION

I.   INTRODUCTION

Plaintiffs respectfully request this Court to enter an order bifurcating the issues of liability and damages in this case. Plaintiffs seek such bifurcation to

3

avoid unfair prejudice against Plaintiffs regarding evidence that while possibly relevant to damages has no relevance to issues of liability. This evidence will be used by the Defendants to attempt to impermissibly portray Plaintiffs' decedent, Lisa Kaina, as a bad person in contravention of *Federal Rule of Evidence* 404(a). As set out below, this evidence includes such things as Plaintiffs' decedent's prior drug use, her incarcerations, and restraining orders taken out between Plaintiffs' decedent and some of the Plaintiffs herein. While all of this evidence may have some relevance to damages, it is completely irrelevant to issues of liability. Accordingly, in the interests of justice, bifurcation is appropriate.

## II.   BACKGROUND

This case arises out of the shooting death of Plaintiffs' decedent Lisa Kaina by members of the Maui Police Department. At the time of the shooting, the only information that police had about Lisa Kaina was that she had allegedly stolen a motor vehicle and that she was operating it in an allegedly dangerous manner on the public roadways. At no time prior to shooting her dead, did the police have any knowledge of Ms. Kaina's drug use, her prior incarceration, or restraining orders by and between members of her family. While an autopsy determined that Ms. Kaina was under the influence of crystal methamphetamine, neither of the police officers who engaged in the conduct complained of had any

knowledge of such drug use prior to or at the time they shot her dead.

Like many families, the family members who bring suit herein had a difficult and sometimes contentious relationship with Lisa Kaina. The County of Maui has gone to great lengths to identify all restraining orders between various members of the family involving Lisa Kaina, her criminal record of arrests and convictions and other evidence that may be relevant to showing the nature and extent of the loss of love, affection, care and comfort between the Plaintiffs and their decedent. However, there is significant concern that if such evidence is brought before the jury during a trial in which both liability and damages are to be considered in one proceeding, that the evidence relevant to damages will "bleed over" in a highly prejudicial way into the issue of liability. After all, few jurors wish to reward the "bad person."

The interests of justice and fair play respectfully militate in favor of a bifurcated trial on the issues of liability and damages so that the jury may consider, when assessing the officers' liability, whether, given only the information known to the police, the police acted reasonably. If the jurors decide that the police in fact acted reasonably dealing only with the information they had available, the trial will be concluded. If, however, the jurors find that the police acted unreasonably, then the County may have its day in Court regarding the *de*

5

*facto* character evidence that may have weight regarding damages.

III.   ARGUMENT

It is well-settled that "the trial court's decision to bifurcate a trial is reviewed for an abuse of discretion." *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 575 (9th Cir. 1995), *aff'd*, 517 U.S. 830 (1996). "One favored purpose of bifurcation is to accomplish just what the district court sought to do here — avoiding a difficult question by first dealing with an easier, dispositive issue." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001). Setting the parameters of what *de facto* character evidence will be permitted against the Plaintiffs in the damages portion of the trial does present difficult and close questions for the Court to consider. How many of the TROs should be entered? Should Plaintiff's drug and/or arrest record be admitted for purposes of assessing the loss of love, society, affection of the family members? None of these issues need to be addressed until and unless the liability of the officers, based on the information available to them at the time they acted, is first determined.

In a case nearly on all fours with the instant case, *Layman v. Blalack*, 2003 U.S. Dist. LEXUS 8142 D. Or. (February 19, 2003), the plaintiffs' moved to bifurcate the issues of liability and damages in a civil rights case arising out of the shooting of plaintiff's decedent by a deputy sheriff. The basis for the bifurcation

6

was the risk of unfair prejudice to the issue of liability outweighing the probative value of decedent's criminal history as to damages. A copy of this opinion is attached hereto as Exhibit 1. There, the court noted

> Plaintiff moves to bifurcate trial of the liability and damages issues in this matter in order to avoid exposing the jury to evidence of Layman's extensive criminal history before the jury has determined the question of liability. Although plaintiff concedes evidence about Layman's criminal history will be relevant at trial concerning the question of damages, plaintiff asserts that evidence is not admissible to determine Deputy Blalack's alleged liability under Section 1983. In a Section 1983 claim arising from a police shooting, the Fourth Amendment's "reasonableness" standard governs liability analysis. A police officer may use deadly force when he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002) (citations and internal quotations omitted). The reasonableness inquiry is objective, does not take into account the officer's good or bad motivations or intentions, and is viewed "from the prospective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (Citations and internal quotations omitted). The analysis allows "for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* (Citations and internal quotations omitted). Because the

> inquiry turns on whether the officer's conduct was "objectively reasonable," the focus is on the facts and circumstances known to the officer at the time of the shooting. *See id.* at 1184-85. Accordingly, historical evidence about a decedent's criminal record typically is not relevant to determine "the perspective of a reasonable officer on the scene" unless the officer was aware of that history at the time. The parties agree Deputy Blalack did not know about Layman's criminal history before the shooting. Layman's criminal history has no bearing therefore, on the objective reasonableness of defendant Blalack's perceptions.

*Estate of Layman v. Blalack*, 2003 U.S. Dist. LEXIS 8142 (February 19, 2003).

The court therefore bifurcated the trial on the issues of liability and damages precisely to avoid the unfair prejudice that may arise from evidence of a decedent's history which is relevant to damage questions but not to liability.

In a similar set of factual circumstances, the court in *Figueroa v. Gates*, 207 F. Supp. 2d 1085, 1102 (C.D. Cal. 2002) bifurcated the liability and damage claims in a Section 1983 claim against police officers brought by the relatives of two men who were shot.

*And see Kelly v. City of Oakland*, 1997 U.S. Dist. LEXIS 17324 (N.D. Cal. August 5, 1997) (granting motion to bifurcate trial on liability and damages in retaliation and sexual harassment case).

8

There will be no identifiable overlap in testimony on issues of liability and damages. The damage witnesses all appear to be completely distinct from those who observed the police officers' conduct at the place of the shooting. Accordingly, there will be no need to recall witnesses and the interest of judicial economy and convenience of witnesses will be enhanced if bifurcation is ordered.

For all of the foregoing reasons, it is respectfully requested that the instant motion be granted.

DATED: Honolulu, Hawaii, April 16, 2008.

/s/ Brian Duus
DAVID J. GIERLACH
BRIAN A. DUUS
Attorneys for Plaintiffs